AMERICAN PUBLISHING COMPANY *v.* TIP GAMBLE.

*(Nashville.* December Term, 1905.)

1. **LIBEL.** Publication of judicial proceedings without incurring liability for damages for a libel, when.

Unless the court itself has prohibited the publication, or the subject-matter is unfit for publication, a newspaper may, in the absence of a malicious purpose, publish a verbatim or substantially fair and reasonable report of judicial proceedings for the information of the public, without incurring liability for damages for a libel. *(Post, pp.* 676-678.)

Cases cited and approved: Saunders v. Baxter, 6 Heis., 369; Fenstermacher v. Publishing Co. (Utah), 43 Pac., 112, 35 L. R. A., 611; Upton v. Hume (Or.), 33 Pac., 810, 21 L. R. A., 493, 41 Am. St. Rep., 863; Salmon v. Isaac, 20 L. T., 886, 3 Times L. R., 245; Ackerman v. Jones, 37 N. Y. Super. Ct., 42; Stevens v. Sampson, 5 Ex. D., 53, 49 L. J. Q. B., 120, 28 W. R., 87, 41 L. T., 782; Waterfield v. Bishop of Chicester, 2 Mod., 118; Salmon v. Isaac, 20 L. T., 885; Woodgate v. Ridout, 4 F. & F., 223; Regina v. Tanfield, 42 J. P., 424; Salisbury v. Union & Advertiser Co., 45 Hun, 120; McBee v. Fulton, 47 Md., 403; Flint v. Pike, 4 B. & Cr., 473, 6 D. & R., 528; Kane v. Mulvany, Ir. Rep., 26, 2 C. L., 402; Lewis v. Walter, 4 B. & Ald. 605; Thomas v. Croswell, 7 Johns, 264; Grimwade v. Dicks, 2 Times L. R., 627; Haywood v. Haywood, 34 Ch. D., 198, 56 L. J. Ch., 287; 35 W. R., 392, 55 L. T., 729; Dodson v. Owen, 2 Times L. R., 111; Cooper v. Lawson, 8 A. & E., 746, 1 W. W. & H., 601, 2 Jur., 919, 1 P. & D., 15; Clement v. Lewis, (Exch. Ch.), 3 Br. & B., 297, 3 B. & Ald., 702, 7 Moore, 200; Bishop v. Latimer, 4 L. T., 775; Stanly v. Webb., 4 Sandf. (N. Y.), 21; Edsall v. Brooks, 17 Abb. Prac., (N. Y.), 221, 26 How. Prac., 426; Rail-

road v. Wright, 8 L. R., 298; Wason v. Walter, L. C., 4 Q. B., 87, 8 B. & S., 730, 38 L. J. Q. B., 34, 17 W. R., 169, 19 L. T., 418; Cowley v. Pulsifer, 137 Mass., 392.

**2. SAME.** Question for court when language is unambiguous, and question for jury when language is ambiguous.

Where the published and alleged libelous matter is plainly unambiguous, the question of its meaning and character is for the court; but where the meaning is ambiguous, and the words used are reasonably susceptible of two constructions, the one innocent and the other libelous, then it is a question for the jury to determine which construction is the proper one. (*Post, pp.* 678, 684.)

**3. SAME.** Publication of mere pleadings filed in court upon which there has been no judicial action is not privileged.

The privilege and right to publish proceedings in court without liability for damages for libel does not extend to mere pleadings filed in court, upon which there has been no judicial action. (*Post, pp.* 679, 680.)

Cases cited and approved: Park v. Press Co., 72 Mich., 560, 568, 569; Cowley v. Pulsifer, 137 Mass., 392; Barber v. Dispatch Co., 3 Mo. App., 377.

**4. SAME.** Same. Injunction granted upon a bill renders its publication privileged.

But the granting of a preliminary injunction upon a bill filed in chancery, though upon an *ex parte* application at chambers, is such judicial action on the bill as renders it a matter of privileged publication. (*Post, pp.* 680-683.)

Cases cited and approved: McAllister v. Press Co., 15 Am. St. Rep., 363, 364; McBee v. Fulton, 47 Md., 834; Metcalf v. Publishing Co., 20 R. I., 674, 676; Wason v. Walter, L. R., Q. B., 73.

**5. SAME.** Publication of facts constituting a felony is libelous upon its face.

A newspaper publication stating matter about plaintiff which

would support a charge of fraudulent breach of trust against him, which is a statutory felony, is libelous upon its face. (*Post, pp.* 683, 684.)

6. **SAME.** Construction of language by court; question of fairness and accuracy of publication, and whether malice is to be left to the jury.

Where a fiat for an injunction has been granted upon a bill filed in chancery, it is error in the court to charge the jury unconditionally that a publication thereof is not privileged; the court should construe to the jury the language of the bill and the publication, and should leave it to them to say whether the matter as actually published was a fair and substantially accurate report of the contents of the bill, made without actual malice, and upon this basis should place the question of privilege or nonprivilege, nonliability or liability. (*Post, pp.* 680-684, and especially 684, 685.)

Cases cited and approved: Kendrick v. Cisco, 13 Lea, 247; Railroad v. McKenna, 13 Lea, 280; Railroad v. Wynn, 88 Tenn., 321; Barker v. Freeland, 91 Tenn., 112; Toomey v. Atyoe, 95 Tenn., 373; Quigley v. Shedd, 104 Tenn., 560, 566, 567.

7. **SAME.** Same. Special request for charges as to immaterial mistakes properly refused, when.

In an action of libel for the publication of the contents of a bill filed in chancery against the plaintiff, a request to charge that if certain facts were misstated (as, where it was published that the plaintiff was the attorney for a certain party, when the said bill alleged that he was the attorney of another party), but such misstatement was not material and in no wise affected the alleged libelous matter sued for, such mistake would not afford the plaintiff the right to recover, nor deprive the defendant of his defense as to that part of the publication alleged to be libelous, was properly refused, because the jury would necessarily determine the matter contained in such request in deciding whether the publication complained of was a fair and substantially accurate report of the bill to be charged as stated in the foregoing headnote. (*Post, pp.* 672, 675, 684, 685.)

8. **SAME.** Special request to charge publication to be a substantial repetition of a chancery bill is properly refused, when.

A request for the court to charge the jury that the alleged libelous publication was, in all its material particulars, substantially a repetition of the allegations contained in the chancery bill, is properly refused, because it asks the court to usurp the functions of the jury, for it is the duty of the court to construe the bill and also the publication, and then leave it to the jury to say whether the publication is a fair and substantially accurate report or reproduction of the bill, as shown in the sixth headnote. (*Post, pp.* 672, 673, 675, 685.)

9. **SAME.** Malice of publisher is not material, except where publication of report of bill in chancery is fair and substantially accurate.

In an action of libel for the publication of an alleged report of the contents of a bill in chancery filed against plaintiff, the question of the publisher's malice is material to the inquiry only on the hypothesis that the jury should find that the publication contained a fair and substantially accurate report of the contents of the bill, for otherwise the publication would not be privileged, and being libelous upon its face, malice in law would be presumed. (*Post, pp.* 672, 673, 675, 686.)

10. **SAME.** Request to charge that publication made "in good faith and without express malice" is not libel is properly refused as too general.

In an action for libel, a request to charge that, if the publication was made "in good faith and without express malice," the jury should find for the defendant, is properly refused as too general, because the request does not instruct as to the nature of this good faith, which embraces, not only the absence of express malice, but also the positive virtue of a fair, impartial, and substantially accurate report of the proceeding which is the subject of the publication. (*Post, pp.* 673, 675, 686.)

11. **SAME.** Declarations of employee made subsequent to the publication are inadmissible.

In an action against a newspaper for libel in publishing an alleged report of the contents of a chancery bill filed against plaintiff, subsequent declarations made by the reporter who wrote the article that was published are not binding on the defendant, and are inadmissible. (*Post, pp.* 673-675, 686, 687.)

FROM DAVIDSON.

APPEAL from the Circuit Court of Davidson County.— JNO. W. CHILDRESS, Judge.

MR. JUSTICE NEIL made a statement of the case as follows:

This was an action of libel brought in the circut court of Davidson county by the defendant in error against the plaintiff in error to recover damages for the publication of an article in the Nashville American. There was a verdict for $5,000 damages in favor of Col. Gamble against the plaintiff in error, on which judgment was rendered, and from which an appeal has been prayed and prosecuted.

The questions in the case arise out of the following facts:

On the 29th day of January, 1904, Mary Luizer Ham

filed her bill in the chancery court of Davidson county against Thomas Cartwright, sheriff of the county, T. H. Scott, a deputy sheriff, William Warner & Son, and Tip Gamble. In this bill she alleged that as widow of the late John J. Ham she was the owner of a homestead interest in certain real estate described, that her husband died in July, 1901, and that subsequently she became indebted to William Warner & Son.

The bill then alleged the following:

"On the 19th of August, 1902, a judgment for $60.85 in favor of William Warner & Son was obtained before Jake Levine, justice of the peace for Davidson county, against the complainant. Some months thereafter complainant paid to Tip Gamble, attorney for William Warner & Son, $15 to be credited on said judgment but the said Gamble has failed to have the said judgment credited therewith. The true amount, exclusive of cost of said judgment, is $45.85. On May 19, 1903, by order of Attorney Tip Gamble, execution issued from said justice of the peace and was levied upon 'all the right, interest and claim that Mrs. John J. Ham' might have in said premises, by Henry M. Jordan, a constable for Davidson county, to satisfy said judgment of $60.85 and costs in favor of William Warner & Son."

The bill further alleged that a writ of *venditioni exponas* had been issued to the sheriff of Davidson county, and that he had advertised Mrs. Ham's lot for sale for the payment of this debt, that she had no interest in

the property which was subject to execution, and that, if the sale should be allowed to proceed, a cloud would be cast upon her homestead right. She therefore prayed that an injunction might issue to restrain the sale. The bill was sworn to by Mrs. Ham, and was thereupon presented to the Honorable J. A. Cartwright, one of the circuit judges of the State, for the purpose of obtaining a fiat for the issuance of an injunction, and this fiat was on that day, by a written order on the back of the bill, granted in the usual form, directing the clerk and master of the chancery court of Davidson county to issue the injunction as prayed.

After the injunction had been so granted the bill was on the next day, January 29, 1904, filed in the office of the aforesaid clerk and master.

On the 30th day of January, 1904, the Nashville American contained the following publication, in respect of the matters above referred to:

"TO INHIBIT SALE.

"Mary Luizer Ham filed a chancery bill Friday against Thomas Cartwright, sheriff, T. H. Scott, deputy sheriff, William Warner & Son, and Tip Gamble, seeking to restrain the sale of a lot to satisfy a circuit court judgment of $60.85. It is alleged the complainant has a life interest in the property, and, further, that a portion of the judgment was paid to her attorney, Tip Gamble, but that he applied the money to his own use, instead of having it paid over on the judgment. A temporary injunction was issued."

The present suit was brought to recover damages for the injury inflicted by the publication just quoted.

The defendant pleaded not guilty.

His honor in his charge, after stating that the defendant claimed the publication was a privileged one, because it contained the substance of the bill already referred to, and that no malice was entertained or wrong intended, further instructed the jury, as follows:

(A) "The court instructs you that the words alleged to have been published, as set forth in the plaintiff's declaration, were libelous of themselves, and, if the defendant did publish them as alleged therein, the defendant company is liable in damages to the plaintiff therefor.

(B) "The court further instructs you that the publication was not privileged, and as such under the facts of this case cannot be relied upon by the defendant in bar of the plaintiff's action therefor.

(C) "If you shall find that the defendant company, in its issue of the date aforesaid mentioned, did make and publish libelous matter as set forth in the plaintiff's declaration, then and in that event your verdict should be for the plaintiff."

Upon the subject of damages the court charged the jury as follows:

"Should you find for the plaintiff, you shall proceed to award him such damages as would reasonably compensate him for the injuries inflicted, taking into account in estimating same the manner in which it was

made, the nature of its circulation and distribution, and all of the facts and circumstances adduced in the proof tending to show the manner and purpose of the same, and while the amount to be awarded within the sum sued for is within your discretion that discretion should be exercised without passion or prejudice, and with the view to simply award only such sum as would compensate for the injuries resulting from the publication of such a libelous matter."

After the court had thus charged the jury, the counsel for plaintiff in error presented to his honor certain instructions which he asked should be given to the jury, but they were all refused. They were as follows:

"(1) A publication in a newspaper of the contents of a bill filed in a judicial proceeding upon which a fiat for injunction has been granted, when the contents published are pertinent and material to the relief sought, cannot be made the basis of a recovery in a libel suit, even though the contents of said bill so published are false and untrue, unless it appears that the paper making said publication was actuated by malice, and in such case malice is not presumed, but it is incumbent on plaintiff to prove its existence before he is entitled to recover.

"(2)   In undertaking to publish the contents of a court pleading, in order to be entitled to the conditional privilege which the law extends to newspapers in making said publication, the paper is not required to publish the whole of said pleading. It is sufficient if the

substance of all that relates to the alleged libelous matter, or that in any way reflects on it, is fairly and impartially stated.

"(3) If in the publication of the contents of pleadings in court, which publication is made the basis of a suit for libel, it appears that certain facts are misstated, as, for instance, it is published that the plaintiff was the attorney of one party, when, as a matter of fact, the pleading in question alleged that he was the attorney of another party, and the misstatement of this fact was not material to and in no wise affected the alleged libelous matter sued for, such a mistake would not afford the plaintiff the right to recover, nor deprive the defendant of his defense as to that part of the publication alleged to be libelous.

"(4) It is the province of the court to interpret and construe the publication sued on in this case and introduced in evidence by the plaintiff in support of his action, and it is your duty to receive this publication with such construction or interpretation as the court puts on it, and I charge you that said publication in all its material particulars is substantially a repetition of the charges made against the plaintiff in the chancery court bill, which has been introduced in evidence in this case; and I further charge you that for the making of this publication the defendant cannot be held liable in this suit, unless it appears from the proof that said publication was maliciously made. Malice will not be presumed, but may be proven, the burden of proving it

being on the plaintiff, and, if there is in this record no evidence of malice on the part of the defendant towards the plaintiff, then you should return your verdict for the defendant; and the fact that the charge against the plaintiff as made in the bill and repeated in the publication sued on is admitted to be false would not change or alter this result.

"(5) If you find from the evidence that the publication made by the defendant was a fair and substantially true and accurate account of a bill filed in a court of record upon which an injunction was issued, and that the said publication was made in good faith, and not with a malicious motive, then I charge you that you should find for the defendant.

"(6)  If you find from the evidence in this cause that the publication made by the defendant was made in good faith and without express malice, then I charge you that you should find for the defendant.

"(7)  Although you may find the defendant liable in the case, yet, if the proof shows that the publication was not the result of actual malice, this fact should be considered by you in mitigation of the damages you would otherwise award."

During the progress of the trial the plaintiff below introduced John W. Fisher, who, over the objection of the defendant below, testified to a conversation that had passed between himself and W. S. Kane, a reporter on the Nashville American.  Mr. Fisher testified, in sub-

stance, that on Sunday night after the publication had appeared in the paper he had a conversation with Mr. Kane, the reporter who wrote the article, in which conversation Mr. Kane said, in substance, that he had seen Col. Gamble's card in the Nashville Banner denying the publication as made in the Nashville American, and that upon seeing this card he again went to the courthouse and re-read the bill to see if he had made a mistake, and that he said the bill was susceptible of two constructions "and that newspapers wanted the sensational features."

When this evidence was offered, the following occurred:

"The defendant objects to any conversation between Mr. Kane and witness, as they are outside parties, and Mr. Kane is not a party to the lawsuit, and this is a transaction after the publication."

By Mr. Smith, for plaintiff:

"We propose to prove by Mr. Fisher declarations on the part of this reporter showing the motive with which this publication was made concerning Col. Gamble, upon the question of malice, and this question goes, as your honor will see, to the very bottom of our lawsuit, not only to its main features."

By Mr. Anderson, for defendant:

"The point of our objection is that that evidence is not binding or competent against the Nashville American any more than the statement of any other witness."

By the court:

"I cannot see, with my view of the case, the relevancy of it. All you have to prove under your declaration is to show that publication was made, and it is libelous on its face and there is no justification of it. Therefore you did not even have to deny the correctness of it, as it is libelous on its face, and they have no plea of justifiacation. I will hear the witness, and if I change my opinion I can instruct the jury upon it afterwards."

Thereupon the witness was allowed to proceed and make his statement, the substance of which has been already given. The court made no subsequent ruling upon this evidence.

There are five errors assigned as follows: Firstly, that there is no evidence to support the verdict; secondly, that the damages assessed by the jury are so excessive as to evince passion, prejudice, or caprice; thirdly, that the court, erroneously charged the three paragraphs which we have marked (A), (B), and (C); fourthly, that he failed to give in charge to the jury the several instructions which we have marked 1 to 7, inclusive; fifthly, that he erroneously admitted the testimony of the witness Fisher.

J. M. ANDERSON, J. C. BRADFORD, and ROBIN C. COOPER, for the American Publishing Co.

JNO. B. DANIEL, W. D. COVINGTON, A. F. WHITMAN, FIRMAN SMITH, and JNO. E. FISHER, for Gamble.

MR. JUSTICE NEIL, after making the foregoing statement of facts, delivered the opinion of the court.

Unless the court has itself prohibited the publication, or the subject-matter of the trial be unfit for publication (Newell, Def., S. & L., p. 548, section 150), any one may, without incurring liability for damages, publish the proceedings of courts of justice (Newell on Def., S. & L., p. 544, section 147); and the owners of newspapers occupy in respect of such publications the same status as that accorded to other persons, in no respect higher or different (*Fenstermacher* v. *Tribune Pub. Co.*, [Utah], 43 Pac., 112, 35 L. R. A., 611; *Upton* v. *Hume* [Or.], 33 Pac., 810, 21 L. R. A., 493, 41 Am. St. Rep., 863; Newell, Def., S. & L. p. 552, section 158; *Brett, L. J.*, 46 L. J. C. P., 407; *Bramwell, L. J.*, 5 Ex. D., 56; *Salmon* v. *Isaac*, 20 L. T., 886, 3 Times L. R., 245).

The right to publish is subject to the limitation that the report must be a fair one, made in the interest of the public, and without malicious purpose. Newell, Def., S. & L., p. 558, section 166; *Ackerman* v. *Jones*, 37 N. Y. Super. Ct., 42; Newell, p. 544, section 148, subd. 3; *Saunders* v. *Baxter*, 6 Heisk., 369; *Stevens* v. *Sampson*, 5 Ex. D., 53; 49 L. J. Q. B., 120; 28 W. R., 87; 41 L. T., 782; Newell, p. 556, section 162, subd. 7; *Waterfield* v. *Bishop of Chicester*, 2 Mod., 118; Newell, p. 556, section 9; *Salmon* v. *Isaac*, 20 L. T., 885; Newell, p. 556, section 10. Such report should not be mingled with comment, either in the body of it or in the heading, as in such case the presumption of malice would the more easily arise; the place for criticism of this character is in the editorial columns (Newell, Def., S. & L., c. 20, section 19; Mer-

rill's Newspaper Libel, 184) ; and even then the comment should be fair and reasonable (Newell, Def., S. & L., c. 20, section 18; *Woodgate* v. *Ridout,* 4 F. & F., 223 ; . *Reg.* v. *Tanfield,* 42 J. P., 424).

The report need not be a verbatim one, but it must contain the substance of the thing it undertakes to present, or the whole purport of any special, separable part. Newell, p. 552, section 156; Id., p. 554, section 161; *Salisbury* v. *Union & Advertiser Co.,* 45 Hun (N. Y.), 120; Newell, 545; *McBee* v. *Fulton,* 47 Md., 403, 28 Am. Rep., 465; *Flint* v. *Pike,* 4 B. & Cr., 473; 6 D. & R., 528; *Kane* v. *Mulvany,* Ir. Rep., 26, 2 C. L., 402; Newell, p. 553, section 160, subd. 3; *Lewis* v. *Walter,* 4 B. & Ald., 605; Newell, p. 553, section 160, subd. 4. It must not give undue prominence to inculpatory facts, and depress or minify such facts as would explain or qualify the former (*Salisbury* v. *Union & Adv. Co.,* supra; Newell, p. 554, section 161; *Thomas* v. *Croswell,* 7 Johns. [N. Y.], 264, 5 Am. Dec., 269; Newell, p. 557; *Grimwade* v. *Dicks,* 2 Times L. R., 627; Newell, p. 555; *Haywood & Co.* v. *Haywood & Sons,* 34 Ch. D., 198; 56 L. J. Ch., 287; 35 W. R., 392; 55 L. T., 729; Newell, p. 555; *Dodson* v. *Owen,* 2 Times L. R., 111; Newell, p. 556, S. S. 8), and must not omit material points in favor of the complaining party, or introduce extraneous matters of an injurious nature to him (*Cooper* v. *Lawson,* 8 A. & E., 746; 1 W. W. & H., 601; 2 Jur., 919; 1 P. & D., 15; Newell, p. 558; *Clement* v. *Lewis* [Exch. Ch.], 3 Br. & B., 297; 3

B. & Ald., 702; 7 Moore, 200; *Bishop* v. *Latimer,* 4 L. T., 775; Newell, p. 558).

In short, the report must be characterized by fair-mindedness, honesty, and accuracy. Newell, Def., S. & L., p. 551, section 155; *Stanley* v. *Webb,* 4 Sandf. (N. Y.), 21; *Edsall* v. *Brooks,* 17 Abb. Prac. (N. Y.), 221; Id., 26 How. Prac., 426; Newell, p. 545.

If it be found of this character, it is not material that the matter it contains is injurious to the persons involved or referred to therein, since it is of the highest moment that the proceedings of courts of justice should at all times be open to fair inspection, to the end that the public may have the means of knowing how the duties of their officers are preformed, whether faithfully and intelligently or otherwise. In the presence of this public requirement mere private interests must give way. *R.* v. *Wright,* 8 T. R., 298; *Wason* v. *Walter,* L. C. 4 Q. B., 87; 8 B. & S., 730; 38 L. J. Q. B., 34; 17 W. R., 169; 19 L. T., 418; Newell, p. 554, section 147; *Cowley* v. *Pulsifer,* 137 Mass., 392, 50 Am. Rep., 318.

Where the published matter is plainly unambiguous, the question of its meaning and character is for the court; but where the meaning is ambiguous, where the words used are reasonably susceptible of two constructions, the one innocent and the other libelous, then it is a question for the jury which construction is the proper one. Newell, Def., S. & L., c. 15, secs. 1, 5.

"In these cases," says Newell, "there may be two distinct questions for the jury: (1) Is the report fair and

accurate? If so, it is prima facie privileged; if not, the verdict must be for the plaintiff. (2) Was the report, though fair and accurate, published maliciously? Was it published solely to afford information to the public and for the benefit of society, without reference to the individuals concerned; or was it published with the malicious intention of injuring the reputation of the plaintiff? The second question, of course, only arises when the first has been already answered in the affirmative.

"And, of course, there is in each case the previous question for the court, is there any evidence to go to the jury of inaccuracy or of malice? Where there is no suggestion of malice, and no evidence on which a reasonable man could find that the report is not absolutely fair, the judge should direct a verdict for the defendant. Thus where the report is verbatim or nearly so, or corresponds in all material particulars with a report taken by an impartial shorthand writer. But, if anything be omitted in the report which could make any appreciable difference in the plaintiff's favor, or anything erroneously inserted which could conceivably tell against him, then it is a question for the jury whether such deviation from absolute accuracy makes the report unfair; and the trial judge will not direct a verdict for either party." Id., pp. 558, 559, section 166.

It is generally agreed that the privilege, the right to publish without liability for damages, does not extend to mere pleadings filed in court, as, for example, bills in equity upon which there has been no judicial action.

*Park* v. *Detroit Free Press Co.,* 72 Mich., 560, 568, 40
N. W., 731, 1 L. R. A., 599, 16 Am. St. Rep., 544; *Cowley*
v. *Pulsifer,* 137 Mass., 392, 50 Am. Rep., 318; *Barber* v.
*St. Louis Dispatch Co.,* 3 Mo. App., 377. The reason for
this rule is thus stated in *Park* v. *Detroit Free Press
Co.*: "There is no rule of law which authorizes any but
the parties interested to handle the files or publish the
contents of their matters in litigation. The parties, and
none but the parties, control them. One of the reasons
why parties are privileged from suit for accusations
made in their pleadings is that the pleadings are ad-
dressed to courts where the facts can be fairly tried, and
to no other readers. If pleadings and the documents
can be published to the world by any one who gets ac-
cess to them, no more effectual way of doing malicious
mischief with impunity could be devised than filing pa-
pers containing false and scurrilous charges, and getting
these printed as news. . . . A suit thus brought with
scandalous accusations may be discontinued without
any attempt to try it, or on trial the case may entirely
fail of proof or probability. The law has never autho-
rized any such mischief." 72 Mich., 568, 569, 40 N. W.,
734. Of publications of pleadings containing injurious
matter at the mere incipiency of the litigation it is said:
"They possess no privilege, and the publication must
rest on either nonlibelous character, or truth, to defend
it." 72 Mich., 568, 40 N. W., 734.

However, the rule of privilege, in general, covers pro-
ceedings which are in their nature only preliminary if

any judicial action has been had thereon.  Newell, Def., S. & L., c. 19, section 149, note; Id., 152, 153, and notes; Odgers on Libel and Slander (3d Ed.), pp. 278, 279; Townsend on Slander and Libel, p. 361; note to *McAllister* v. *Detroit Free Press Company,* 15 Am. St. Rep., 363; 364; *McBee* v. *Fulton,* 47 Md., 334, 28 Am. Rep., 465; *Metcalf* v. *Times Publishing Company,* 20 R. I., 674, 40 Atl., 864, 78 Am. St. Rep., 900.

In the case last mentioned the special phase of the question we now have before us was considered and decided.  It was there held that, after a bill in equity had been submitted to a judge at chambers on an application for a preliminary injunction, and the order had been granted, this was such judicial action as rendered the bill matter of privileged publication.  Said the court: "It is a matter submitted to a judge, and he acts upon it.  It is within the rule, and the cases which we have referred to.  . . .  If this was not judicial action, it would be difficult to say what would be, short of a full trial of the case.  Although the motion was in chambers, still, under our practice, as all such motions and interlocutory orders are made in chambers, technically we cannot say that it was not in court." 20 R. I., 679, 40 Atl., 866, 78 Am. St. Rep., 900.  And see the discussion of the general subject in *McBee* v. *Fulton,* 28 Am. Rep., 464-474.  On page 473 it is said, quoting the judgment of Cockburn, C. J., in *Wason* v. *Walter,* L. R. Q. B., 73: "Whatever disadvantages attach to a system of unwritten law, and of these we are fully sensible, it has at least

this advantage, that its elasticity enables those who administer it to adopt it to the varying conditions of society, and to the requirements and habits of the age in which we live, so as to avoid the inconsistencies and injustice which arise when the law is no longer in harmony with the wants and usages and interests of the generation to which it is immediately applied. Our law of libel has in many respects only gradually developed itself into anything like a satisfactory and settled form. The recognition of the right to publish the proceedings of courts of justice is of modern growth. Till a comparatively recent time the sanction of the judges was thought necessary even for the publication of the decisions of the courts upon points of law. Even in quite recent days judges in holding publication of the proceedings of courts of justice lawful have thought it necessary to distinguish what are called *ex parte* proceedings as a probable exception from the operation of the rule. Yet *ex parte* proceedings before magistrates, and even before this court, as, for instance, our applications for criminal information, are published every day, but such a thing as an action or indictment founded on a report of such an *ex parte* proceeding is unheard of. If any such action or indictment should be brought, it would probably be held that the true criterion of the privilege is not whether the report was or was not *ex parte*, but whether it was a fair and honest report of what had taken place, published simply with a view to the information of the public, and innocent of all in-

tention to do injury to the reputation of the party affected."

Applications for preliminary injunctions are in this state usually of the same *ex parte* character described in the Rhode Island case, and under this practice the bill referred to in the present case was presented to Judge Cartwright, and the fiat was granted by him. The granting of that fiat was a judicial act. The bill, therefore, after having been made the subject of such action, and upon thereafter having been placed in the files of the chancery court, became a paper which might be published within the protection of the privileged list.

We shall now apply the foregoing principles, so far as may be necessary, to the questions raised by the assignments of error.

We shall pretermit any discussion of the matters contained in the first and second assignments.

The third assignment makes the point that the circuit judge erred in charging the jury as set forth in the propositions marked (A), (B), and (C), in the statement. The instructions thus given were, in substance, that the publication complained of was, on its face, libelous, that is was not privileged, and that the defendant below was liable in damages therefor.

We are of the opinion that his honor acted correctly in instructing the jury that the publication was libelous on its face, since it stated matter which would support a charge of fraudulent breach of trust against the plain-

tiff in error, which is a felony under the statutes of this state.

His honor acted incorrectly in instructing the jury unconditionally that the matter contained in the publication was not privileged. He should have given them in charge the first, second, and fifth instructions appearing under the fourth assignment of errors, and should at the same time have construed to the jury the language of the bill, also the language of the publication. It is the duty of the court to construe "unambiguous writings upon which the rights of parties are based." *Quigley* v. *Shedd*, 104 Tenn., 560, 566, 567, 58 S. W., 266; *Railway* v. *Wynn*, 88 Tenn., 321, 14 S. W., 311; *Barker* v. *Freeland*, 91 Tenn., 112, 18 S. W., 60; *Toomey* v. *Atyoe*, 95 Tenn., 373, 32 S. W., 254; *Railroad Co.* v. *McKenna*, 13 Lea, 280; *Kendrick* v. *Cisco*, 13 Lea, 247. Having so construed the writings, he should have left it to the jury to say whether the matter as actually published was a fair and substantially accurate report of the contents of the bill, and without actual malice; and upon this basis should have placed the question of privilege or nonprivilege, liability or nonliability.

We do not think his honor erred in refusing to charge the third instruction appearing under the fourth asssignment of error. The jury would necessarily determine the matter therein referred to in deciding whether the publication complained of was a fair and substantially accurate report of the bill, and this they will be enabled

to do in the next trial when instructed according to the directions contained in the preceding paragraph.

The court below did not err in refusing to charge plaintiff in error's fourth instruction. The error in this instruction was that plaintiff in error thereby sought to have his honor charge the jury that the publication complained of was, in all its material particulars, substantially a repetition of the allegations contained in the chancery bill, thereby asking the court to usurp the functions of the jury. As already indicated, it was the duty of the court to construe the bill and also the publication, and then leave it to the jury to say whether the latter was a fair and substantially accurate report, or reproduction of the former.

The proposition in respect of malice, contained in the instruction referred to, would also have been misleading to the jury if given in union with the erroneous matter just referred to. They were sound only upon the hypothesis that the jury should find that the publication contained a fair and substantially accurate report of the contents of the bill upon the subject referred to in such report. If the publication failed, in the estimation of the jury, to come up to this description, then it could not be held privileged, and, being libelous on its face, malice in law would be presumed. If it did attain the plane of privilege, then plaintiff in error could be held liable only upon proof of express malice as set forth in the instruction under examination. We assume that it was the purpose of the instruction

to call the attention of the jury to the subject of express malice, as distinguished from implied malice, or malice in law, but this is not done with sufficient clearness.

The sixth instruction, appearing under the fourth assignment, was properly refused, because too general. It is not sufficient to instruct the jury merely that, if the publication was made "in good faith" and without express malice, they should find for the defendant. They should be instructed as to the nature of this good faith, which embraces, not only the absence of express malice, but also the positive virtue of a fair, impartial, and substantially accurate report of the proceeding which is the suject of the publication.

The court below did not err in refusing the seventh instruction. The charge as given sufficiently covered the question of damages.

The fifth assignment must be sustained. The testimony therein referred to was incompetent. 1 Elliott on Ev., section 252. It consisted merely of statements made by a reporter of the Nashville American, after the publication had appeared in the paper, expressing his opinion that the chancery bill was capable of two constructions, and giving the reason why he had adopted the one construction rather than the other in preparing his matter for the press. This was merely the narrative of a past transaction, not the statement of an agent while in the active discharge of his duty as such, and in respect of matters then in course of dispatch. Nor was the testimony rendered competent through the state-

ment made by Mr. Kane, to the effect that he had seen Col. Gamble's publication in the Nashville Banner, and had thereby been induced to make a second examination of the chancery bill with a view to ascertaining whether he had been mistaken in his first construction. It is insisted that this testimony was competent for the purpose of showing that the Nashville American had knowledge of the false character of its publication before the suit was brought, and yet had not published a retraction. It is not shown in the evidence that Mr. Kane stood in such relation to the plaintiff in error as that notice to him, after the transaction, would be notice to his employer. The mere fact that he was the reporter who had furnished the objectionable matter would not be sufficient.

We have considered the other reasons offered in defendant in error's brief in support of the competency of the evidence, and find none of them well taken.

For the errors indicated, the judgment of the court below must be reversed, and the cause remanded for a new trial.