Davis, J.
We regard it as unnecessary to consider whether the demurrer to the first defense stated in the answer of the defendants should have been sustained. The demurrer to the first defense having admitted the facts pleaded for the purposes of the demurrer onlv, when the demurrer was overruled the issue made by the petition and the answer remained for trial; and therefore the court of common pleas erred in rendering judgment against the plaintiff on the pleadings and the circuit court erred in affirming that judgment. That is the necessary result in the view which we take of the third defense.
The second defense is evidently drawn with the intention of raising the point that the publication *417 was one of a qualified privilege, and it is frankly admitted by counsel that this defense is-, irreconcilable with the ruling of this court in The Cincinnati Gazette Co. v. Timberlake, 10 Ohio St., 549, and accordingly a vigorous effort is made to show that the doctrine of that case is wrong and should now be overruled. We shall not undertake to review the cases which counsel have brought to our attention from other jurisdictions. It is suffb cient to say that few, if any, of them are relevant to the precise facts of this case, and none of them -is convincing'to us that the case of The Cincinnati Gazette Co. v. Timberlake, supra, was wrongly decided. Whatever may be said as to the authorT ity, at the present time, of cases cited by the court in the opinion, the reasons given seem to be sound and even more applicable to the case now in hand than the one then under consideration. We quote ■from the opinion. “But in this case there is no claim that the' charge against, the plaintiff below was, in fact, true. The defense rests wholly ■ on the claim of privilege. And if the publisher, of a newspaper may, in virtue of his vocation, without responsibility, publish the details of every criminal charge before a police officer, however groundless, ■and whether emanating from the mistake or the malice of a third party, then must private character be, indeed, imperfectly protected. Such publications not only inflict an injury of the _ same kind with any other species of defamation, but -their tendency is also to interfere with 'the -fair and impartial administration of justice, by -poisoning ■the public mind' and creating a prejudice against a-party, whom the law still presumes to be .inno *418 cent.” What follows.this quotation in the opinion might well 'be adopted, mutatis mutandum, in the present case.
The publication was not a fair and accurate report of any judicial “proceeding” or, still less than the Timberlake case, of any purely "ex parte proceedings,” for in that case a warrant had been issued and an arrest had been made, although the accused was discharged on the very day of the publication. In this case no action had been taken by the justice of the peace, no warrant had been “issued” and no arrest had been made. It appears from the alleged retraction which is set out in the answer that the affidavit had not been sworn to and that the justice convinced the complainant that he could not maintain an action against the plaintiff whereupon he took the affidavit away without having sworn to it. We can not conceive of any-process of reasoning, nor of any considerations of public policy, which would justify-such a publication as this one was, under the facts of this case, as a privileged publication, in the face of the well supported doctrine that there is no privilege extended to the publication of papers which ■have been merely filed in court and on which there has been no judicial action. It was thus expressed in one case: “There is no rule of law which authorizes any but the parties interested to handle the files or publish the contents of their matters in litigation. The parties, and none but the parties, control them. One of the reasons why parties are privileged from suit for accusations made-in their pleadings is that the pleadings are addressed to courts where the facts can be fairly *419 tried, and to no other readers. If pleadings and other documents^ can be published to the world by any one who gets access to them* no more effectual way of doing malicious mischief with impunity could be devised than, filing papers containing false and scurrilous charges, and getting those printed as news. The public have no rights to any information on private suits till they come up for public hearing or action in open court; and, when any publication is made involving such matters, they possess no privilege, and the publication must rest on either non-libelous character or truth to defend it. A suit thus brought with scandalous accusations may be discontinued without any attempt to try it, or on trial the case may entirely fail of proof 'or probability. The law has never authorized any such mischief. In Scripps v. Reilly, 35 Mich., 371, 38 Id., 10, this court found it necessary to decline accepting the doctrine of privilege in such cases.” Park v. Free Press Co., 72 Mich., 560, 568. The same distinction was recognized and the doctrine applied in Cowley v. Pulsifer, 137 Mass., 392; Sutton v. Belo & Co., (Civil App. Texas), 64 S. W. Rep., 686; Barber v. St. Louis Dispatch Co., 3 Mo. App., 377; American Pub. Co. v. Gamble, 115 Tenn., 663; Stuart v. Press Pub. Co., 83 N. Y. App. Div., 467, 478, 479. We need not pursue the discussion of this subject further. The demurrer to the second defense should have been sustained.
We come now to the consideration of a question of more serious import. The third defense was drawn under Revised Statutes, Section 5094, as amended and supplemented by an act *420 passed April 16, 1900; 94 O. L., 295. The effect of the amendment^ as claimed by the defendants, and upon the construction adopted by the United States Court of Appeals in Post v. Butler, 137 Fed. R., 723, is that “it is optional with the person libeled to stand upon his rights under the old law, or to waive a part by demanding and accepting a retraction under the law as amended.” The federal court could see no way to sustain the statute as constitutional, except by adopting the construction above given; and we are o.f the opinion, for reasons that will appear, that even that construction, obviously resorted to for the purpose of saving the statute, will not relieve it from the taint of unconstitutionality.
The constitutional guaranties are that “every person, for an injury done him in his land, goods, person or reputation, shall have remedy by' due. course of law” (Const. Ohio, Art. I., Sec. 16), and, “No state .shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law.” Const. U. S., Fourteenth Amendment. In Park v. Free Press Co., supra, the court say: “There is no room for holding in a constitutional system that private reputation is anv more subject to be removed by statute from full legal protection than life, liberty, dr property. It is one of those rights, necessary to human society that underlie the-whole social scheme of civilization. It is a.thing which is more easily injured than restored, and where injury is capable of infinite mischief. And, on the other hand, it is, *421 'one where the injury is freqúently, ■ and perhaps generally, aggravated by malice. - The law has ■therefore always drawn distinctions between intentionally false and wicked- assaults on character, •and those which were not actually designed to •create a -false impression,- although necessarily tending to injure reputation if false in fact, but it has riiade both actionable.”- • • ■ .
In McGee v. Baumgartner, 121 Mich., 287, the •court approved and followed Park v. Free Press Co., holding that “The right to recover in an action of libel for damages to reputation; can not be abridged by statute.”
Now in what respect, if any, are the rights and privileges of the plaintiff abridged by the statute? Or, in what respect, if any, is he deprived of his remedy by due course of law? We confine'ourselves to the consideration of the statute as construed in Post v. Butler, supra, because this defense is'planted on Post v. Butler, and because if the statute as therein construed can not be sustained as constitutional, it is conceded in that case to be unconstitutional. ' “Due process' of law in each párticular case means such • an exertion of -the powers of government as the settled maxims of the law permit and sanction, and under such safeguards for protection of individual rights as those maxims prescribe for the class of cases to which ■the one in question belongs.” Cooley Const. Lim., Sec. 356. Due process of law has also been defined to be, “Law in its regular form of - administration through courts of justice:” 2 Kent Com., 10. It is obvious that it does not-mean that anything which the' legislature may declare, without *422 regard to constitutional limitations, is due process of law; for that would abrogate all guaranties of the constitution. By settled principles of the common law, the publication of defamatory matter, which is false in fact and not privileged, is presumed to be malicious, that is, the plaintiff may recover without proving malice and the burden is upon the defendant to disprove it. This is the I substantive law and not mere matter of procedure. By the common law, also, one who is injured by such a publication may, by natural right, demand an apology or retraction, but unless it were accepted as a satisfaction it would not be a complete defense and would only be considered in mitigation of damages. This again is substantive law and not a matter of formal procedure. These rules have always been regarded as primary and essential in the law of libel for protection of reputation not only for injury which may be measured by money values, but for that “intangible but fatal influence which suspicion, helped by ill will, spreads beyond recall or reach by apology or retraction.” And therefore they are to be regarded as part of the “remedy by due course of law” of which the constitution declares that no person shall be deprived. These rights the legislature did not give to the libeled person and the legislature can not take them away. We are not disposed to question, at least for our present purpose we will not, that a citizen may waive a constitutional right; but we do deny that he can be compelled to waive his right, or that he can be arbitrarily subjected to an option to stand upon one right under penalty of losing another. Under this statute the plaintiff *423 is given the choice of resorting to the courts without the right of demanding a retraction, or of demanding a retraction, and, if given, being limited in his right of recovery; and if he chooses either course, he must do it at his own peril and without any recompense whatever. Recurring again to the opinion in Park v. Free Press Co., supra, “it is not competent for the legislature to give one class of citizens legal exemption for wrongs not granted to others; and it is not. competent to authorize any person, natural or artificial, to do wrong to others without answering fully for the wrong.”
It was said in the argument that the circuit court in disposing of this case said that there could be no doubt that the legislature had the power to change the presumption as to malice. The constitutional power of the legislature to prescribe the presumptions of evidence and to change the rules of evidence was recently considered by this court in The Williams & Thomas Co. v. Preslo, ante, 328.
That was a case in which property interests were concerned, and it was held that the provisions of the constitution which require that laws regulating rights in property shall operate generally and equally, extend to statutes which prescribe presumptions and rules of evidence by which those rights are enforced. In other words, the guaranties of the constitution, which are the same for the protection of property and reputation, shall be regarded by the legislature as well in passing laws relating to evidence and remedies as to substantive law.
*424 ■ The demurrér to the third defense should have been sustained; and the judgments of the circuit court and court of' common pleas are

Reversed and cause remanded.

Spear, C. J., Shauck, Price and Johnson, JJ., concur.
Donahue, J., concurs in the first proposition of the syllabus, but does not concur in the second.