Billy STEM, d/b/a Crown Manufacturing, a sole proprietorship, Plaintiff,

v.

GANNETT SATELLITE INFORMATION NETWORK, INC., a/k/a Nashville Offset, d/b/a THE JACKSON SUN of Jackson, Tennessee, Defendant.

No. 93–1135.

United States District Court, W.D. Tennessee, Eastern Division.

Sept. 23, 1994.

---

3. Thereby entitling her to receive unemployment compensation.

Fred M. Ridolphi, Jr., David M. Dunlap, Memphis, TN, for plaintiff.

Charles M. Purcell, Jackson, TN, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TODD, District Judge.

Plaintiff Billy Stem, d/b/a Crown Manufacturing, filed this defamation action against Defendant Gannett Satellite Information Network, Inc., a/k/a Nashville Offset, d/b/a *The Jackson Sun.* The allegedly defamatory statement published in *The Jackson Sun* was based on the contents of an affidavit filed in support of a search warrant in a criminal case. Defendant has moved for summary judgment on the grounds that (1) the publication of the statement is privileged under Tennessee law as a fair and accurate report of a judicial proceeding, (2) the article was a fair and accurate report of the affidavit, and (3) there is no evidence of actual malice to defeat the fair report privilege. Plaintiff has responded, asserting that the fair report privilege does not apply to statements contained in an affidavit filed *ex parte* in support of a search warrant, and, alternatively, that the privilege does not apply because Plaintiff was not the subject of the search warrant nor a party to the criminal proceedings. Plaintiff has moved for partial summary judgment on this issue. Plaintiff also contends that, even if the privilege applies, Defendant lost its privilege by failing to fairly and accurately report the statements in the affidavit. For the reasons set forth below, Defendant's motion is GRANTED, and Plaintiff's motion is DENIED.

■ To prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the nonmovant's case." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). The moving party may support the motion with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477

U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon the pleadings but "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R.C.P. 56(e).

■ "If the defendant ... moves for summary judgment ... based on the lack of proof of a material fact, ... [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. Rather, "[t]he inquiry on a summary judgment motion ... is ... 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" *Street,* 886 F.2d at 1479 (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.)

The following facts are undisputed. On August 31, 1992, Sandy Hodson, a reporter for *The Jackson Sun,* obtained from the U.S. District Court Clerk's office a copy of an affidavit filed by FBI Agent William Castleberry in support of a search warrant. At the time Hodson obtained the affidavit, the search warrant had already been executed and returned to the clerk's office. The affidavit concerned the alleged criminal activities of Kenneth Wayne Fowler and Jimmy Wayne Nance. The initial sentence of the affidavit stated that the affidavit was based on Castleberry's "review of official law enforcement reports and discussions with law enforcement officials." The affidavit stated, in relevant part:

That Kenneth Wayne Fowler has invested a large amount of money made from drug trafficking into legitimate business ventures in Lake and Obion Counties, including a home-building business, a cap factory and farm land.

The next paragraph of the affidavit stated:

That S2 [an informant] has personal knowledge that Fowler has invested the

profits from drug trafficking in Crown Manufacturing, a cap factory in Samburg, Tennessee, and has also purchased farm land, and financed a home-building business with drug trafficking profits.

Before writing her story, Hodson talked to T.B.I. Agent John Mehr who was mentioned in the affidavit and with Plaintiff who owned Crown Manufacturing. Plaintiff denied that Fowler, his son-in-law, had invested any money in the business.

The following statement, which appeared in Hodson's article in *The Jackson Sun* on September 1, 1992, is the basis of the action for defamation:

> According to the FBI agent's statement, Fowler invested a large amount of drug-trafficking proceeds in farmland, a home building business and Crown Manufacturing, a cap factory in Samburg.

The article identified the FBI agent's statement as a "sworn statement which persuaded [Magistrate Judge Daniel] Breen to issue ... search warrants" for the homes of Fowler and Nance. After the sentence referring to Crown Manufacturing, the article stated:

> However, the owner of Crown Manufacturing, Billy Stem, said Monday afternoon [that] Fowler doesn't have any financial or any other interest in his company. Stem said he couldn't imagine where the officers got their information. Fowler's remote connection is to his wife—Stem's daughter—who works with the rest of Stem's immediate family at the factory, Stem said.

The article reported that the affidavit referred to "six unidentified sources who provided investigators with information about the alleged drug trafficking network."

*Is the publication of the statement privileged under Tennessee law as a fair and accurate report of a judicial proceeding?*

■ Although it is well settled that publication of statements made in judicial proceedings are privileged, *American Publishing Co. v. Gamble*, 115 Tenn. 663, 90 S.W. 1005 (Tenn.1905), it does not appear that Tennessee courts have addressed the issue of whether the privilege applies to the publication of an article that is based on an affidavit

filed in court in support of a request for a search warrant. However, Tennessee courts have extended the privilege beyond proceedings that occur in open court. In *Langford v. Vanderbilt University*, 199 Tenn. 389, 287 S.W.2d 32, 37 (1956), the Court held that the privilege extended to "mere contents of pleadings filed in Court though no judicial actions ha[d] been taken" even if the allegations in the pleadings proved to be false. In holding that the publication of information contained in an arrest warrant issued *ex parte* was privileged, the court in *Duncan v. Knoxville Journal*, 20 Med.L.Rptr. 1391, 1992 WL 136172 (BNA) (Tenn.App.1992), equated the issuance of the arrest warrant with a "judicial proceeding." *American Publishing Co. v. Gamble*, 115 Tenn. 663, 90 S.W. 1005 (Tenn.1905) found the publication of an information in an *ex parte* sworn application for an injunction and fiat to be privileged.

Jurisdictions that have addressed the issue of whether an affidavit filed in connection with a judicial proceeding is privileged have held that the fair report privilege does apply. *See e.g., Sibley v. Holyoke Transcript–Telegram*, 391 Mass. 468, 461 N.E.2d 823 (1984); *Mark v. Seattle Times*, 96 Wash.2d 473, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2942, 73 L.Ed.2d 1339 (1982). This is true even when the statement is made about a person who is not a party to the judicial proceeding. In *Philomena v. WKBN Broadcasting Corp.*, 1987 WL 31938 (Ohio App.1987), the court considered a defamation claim by a third party who was incidentally mentioned in an FBI affidavit filed in federal court. The court affirmed summary judgment for the broadcaster. The Tennessee Supreme Court reached a similar result in *American Publishing Co. v. Gamble*, 115 Tenn. 663, 678, 90 S.W. 1005 (Tenn.1905) by noting that, if a statement is found to be a fair and accurate report, "it is not material that the matter it contains is injurious to the persons involved or referred therein." (emphasis added). To hold otherwise would restrict reporters in their coverage of judicial proceedings by forcing them to delete all references to third parties.

Plaintiff relies on Restatement (Second) of Torts, § 611, comment h, in support of his

argument that publication of the contents of an affidavit in support of a search warrant is not privileged. Comment h states that statements made by the police or other witnesses about the facts of a case or the evidence expected to be given are not yet part of the judicial proceeding and are not privileged. Plaintiff cites *Moore v. Bailey*, 628 S.W.2d 431 (Tenn.App.1981), for this same proposition. In the present case, the affidavit was filed in court and, thus, became part of a judicial proceeding, unlike *Moore* and comment h which refer to out-of-court statements made to an investigator. The holding in *Moore* rested on the fact that there was "no tribunal present ... [t]herefore, [the defendant's] statements were not privileged and were actionable." *Id.* at 436.

More applicable to this case are comments b and d to § 611 which state that:

The filing of a report by an officer or agency of the government is an action bringing a reporting of the governmental report within the scope of the privilege. The privilege is thus applicable to the report of proceedings before any court, whether it is one of general or of special and limited jurisdiction.

If the report of a public official proceeding is accurate or a fair abridgment, an action cannot constitutionally be maintained, either for defamation or for invasion of the right of privacy.

There is no reason for the allegations in a pleading or the contents of an *ex parte* arrest warrant to be encompassed by the fair report privilege and not an affidavit in support of a search warrant. Since the affidavit in question was part of a judicial proceeding, even though Plaintiff was not a party to that proceeding, the Defendant's article based on the affidavit falls within the fair report privilege.

### Was the article a fair and accurate report of the affidavit?

■ Plaintiff contends that the article did not report the statements contained in the affidavit fairly and accurately. Plaintiff correctly notes that, to be privileged, a report must be a fair and accurate summation of the proceeding it purports to describe. *See American Publishing Co. v. Gamble*, 115

Tenn. 663, 676–78, 90 S.W. 1005 (1906) and *Black v. Nashville Banner Publishing Co.*, 24 Tenn.App. 137, 145, 141 S.W.2d 908 (1939). The report does not have to be a verbatim account but, instead, only must give a "correct and just impression of what took place in Court." *Langford v. Vanderbilt Univ.*, 44 Tenn.App. 694, 318 S.W.2d 568, 574 (1958).

■ Plaintiff asserts that the article was not a fair and accurate report because it attributed the statement concerning Crown Manufacturing to "the FBI agent's statement" rather than to the informant. There are two references to either Crown Manufacturing or a cap factory in the affidavit. The first reference is contained in a lengthy paragraph by Castleberry as to information he knows as the result of his review of law enforcement records and discussions with law enforcement officers. He does not appear to attribute the allegation that Fowler has invested drug money in a cap factory to an informant in this paragraph, although informant "S1" is mentioned in a previous paragraph. The second reference to Fowler's investing money in Crown Manufacturing, a cap factory, is attributed specifically to an informant.

Hodson testified that she thought the first reference to Crown Manufacturing was based on Castleberry's own knowledge, (Hodson Depo. pp. 68–76), and it was reasonable for her to do so since a reference to a "cap factory" was contained in a paragraph prior to the reference that was attributed to informant "S2." A fair reading of the affidavit indicates that the source of the first reference was Castleberry's review of the law enforcement records and discussions with law enforcement officers even though Castleberry stated, after publication of the article, that the statements about Crown Manufacturing were attributable to the informants rather than to his own investigation. (Castleberry Declaration). Despite Hodson's belief that the information about Crown Manufacturing came from Castleberry's own investigation, the article acknowledges that the affidavit contained information obtained from unnamed sources.

360

The circumstances in *Time, Inc. v. Pape,* 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971), are similar to the circumstances in this case. In *Pape,* a magazine quoted from a complaint filed in a civil rights lawsuit without indicating that the allegations against a detective had been made by the civil rights plaintiff instead of being the independent findings of the Civil Rights Commission. The *Pape* Court noted that "the publication sued on was not Time's independent report of the ... episode, but its report of what the Civil Rights Commission had said about that episode." *Id.* at 285, 91 S.Ct. at 637. Also, the plaintiff alleged damages not "arising from mere publication, but rather that resulting from attribution of the ... accusations to an authoritative official sources." *Id.* Additionally, the Commission report was somewhat ambiguous as to whether the civil rights plaintiff's allegations were merely repeated as allegations or whether the Commission believed the allegations to be true. *Id.* at 290, 91 S.Ct. at 639–40. The Court found that the magazine had adopted "one of a number of possible rational interpretations of a document that bristled with ambiguities" and that "the deliberate choice of such an interpretation, though arguably reflecting a misconception, was not enough to create a jury issue of 'malice'." *Id.* In this case, Castleberry's affidavit is unclear as to the source of the information about Crown Manufacturing. Hodson's interpretation that Castleberry had gained the information from his own investigation does not mean that the article was inaccurate.

There is also no merit to Plaintiff's contention that the article conveyed the impression that Crown Manufacturing was a participant in the drug trafficking organization. Only the last two paragraphs in a fifteen paragraph article related to Crown Manufacturing, and one of these paragraphs contained Plaintiff's denial. Accordingly, the court finds that the article was a fair and accurate report of the affidavit.

### Is there evidence of actual malice which would defeat the fair report privilege?

■■■ Because the privilege extends to report of affidavits filed in support of search warrants, only proof of actual malice will defeat the privilege. *See Langford v. Vanderbilt Univ.,* 199 Tenn. 389, 287 S.W.2d 32, 36–37 (1956); *American Publishing Co. v. Gamble,* 115 Tenn. 663, 678–79, 90 S.W. 1005 (1906). "Actual malice" is present when a statement is made with knowledge that it was false or with reckless disregard of whether it was false. *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964). *Accord Memphis Publishing Co. v. Nichols,* 569 S.W.2d 412, 415 (Tenn.1978). To prove actual malice, there must be evidence to support the conclusion that the defendant, in fact, entertained serious doubts as to the truth of the publication but published in spite of the doubt, thus showing reckless disregard for truth or falsity. *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325–26, 20 L.Ed.2d 262 (1968); *Moore v. Bailey,* 628 S.W.2d 431, 433–34 (Tenn.App.1981). The burden is on the plaintiff to show with "convincing clarity" the facts which constitute actual malice. *Trigg v. Lakeway Publishers, Inc.,* 720 S.W.2d 69, 75 (Tenn.App.1986).

■■■ Plaintiff acknowledges that failure to investigate before publishing, standing alone, is not sufficient to establish reckless disregard for the truth. *See Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989) and *St. Amant v. Thompson,* 390 U.S. 727, 733, 88 S.Ct. 1323, 1326–27, 20 L.Ed.2d 262 (1968). However, Plaintiff argues that the circumstances surrounding the affidavit put Hodson on notice that she should have investigated more fully, and he cites *Harte–Hanks, St. Amant,* and *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) for the proposition that, when a third-party informant's allegations are reported, recklessness may be found when there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports and there is little or no effort to investigate the truthfulness of such allegations.

In *Harte–Hanks,* the defendant newspaper investigated allegations that the plaintiff, a candidate for political office, had manufac-

tured harmful testimony about his opponent. *Harte–Hanks,* 491 U.S. at 682, 109 S.Ct. at 2693. Despite its purported investigation, the newspaper did not interview a key witness who could have verified or disproved the allegations and did not to listen to a tape which indicated that the allegations were untrue. *Id.* at 682–83, 109 S.Ct. at 2693. The Court found that the most serious allegation published by the newspaper was highly improbable and inconsistent with the facts and that this was well known to the newspaper *before* it published the defamatory article. *Id.* at 691, 109 S.Ct. at 2697. In upholding a jury verdict in favor of the plaintiff, the Court found that the newspaper's failure to conduct a complete investigation involved a deliberate effort to avoid the truth. *Id.* at 684–85, 692, 109 S.Ct. at 2694, 2698.

*Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), involved a situation similar to *Harte–Hanks* in which the Saturday Evening Post had reason to doubt its informant's veracity and could easily have investigated to determine the truth or falsity of the allegations. The editors did not interview a witness or review films that could have confirmed or refuted the informant's story. *Id.* 388 U.S. at 157, 87 S.Ct. at 1992–93. The Court described the investigatory techniques employed by the defendant as "slipshod and sketchy." *Id.* at 169–170, 87 S.Ct. at 1999.

In *St. Amant,* the defendant repeated on television allegations of criminal activity by the plaintiff. *St. Amant,* 390 U.S. at 728, 88 S.Ct. at 1324. The Court reversed a jury verdict in favor of the plaintiff because there was insufficient evidence to establish malice. *Id.* at 733, 88 S.Ct. at 1326–27. The Court noted that "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.* at 732, 88 S.Ct. at 1326. However, the record did not show that the defendant had any reason to doubt the veracity of the person giving him the information about plaintiff. *Id.* at 733, 88 S.Ct. at 1326.

In this case, Hodson based her article on the affidavit of FBI Agent Castleberry which stated that he had obtained the information from his *own* review of law enforcement records and discussion with law enforcement officers. Hodson did not repeat allegations that had been made to her by someone whose veracity she had reason to doubt. Instead, she reported statements made in a sworn document that was presented to a United States magistrate judge by an FBI agent with twenty-six years experience as a criminal investigator. (Attachment to Castleberry's Affidavit, p. 1). There were no obvious reasons to doubt Castleberry's veracity. *See Dickey v. CBS Inc.,* 583 F.2d 1221 (7th Cir.1978) (There was no reason to doubt the veracity of the source of the report, a congressman who was well acquainted with the content of his allegations.)

Reckless conduct is not measured by whether a reasonable person would have investigated prior to publishing, but, whether the defendant had reason to believe he should investigate. *St. Amant,* 390 U.S. at 731, 88 S.Ct. at 1325–26; *Trigg v. Lakeway Publishers, Inc.,* 720 S.W.2d 69, 74–75 (Tenn. App.1986). In this case, Plaintiff has presented no evidence to show that Defendant entertained serious doubts, or even should have entertained serious doubts, about the truth of the contents of the affidavit. Therefore, Plaintiff's argument must fail.

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for partial summary judgment is DENIED. The clerk is directed to enter judgment in favor of Defendant in accordance with this opinion.

IT IS SO ORDERED.