PAMELA LANGFORD, a Minor, by next friend, ROBERT L. LANGFORD, and MRS. ROBERT L. LANGFORD and ROBERT L. LANGFORD *v.* VANDERBILT UNIVERSITY *et al.* (six cases).

(*Nashville,* December Term, 1955.)

Opinion filed February 3, 1956.

Sims Crownover, and Thomas G. Watkins, both of Nashville, for plaintiffs in error.

Bass, Berry & Sims, of Nashville, for Vanderbilt University.

Louis Farrell, Jr., and K. Harlan Dodson, Jr., both of Nashville, for Benson Printing Co.

Stokes & Trimble, of Nashville, for Ormonde Plater.

Mr. Justice Tomlinson delivered the opinion of the Court.

Mrs. Langford caused the issuance of a summons wherein she sought damages from Vanderbilt University and others for an alleged libel. Her declaration filed at the same time alleged the offending publication to have appeared in the January 28, 1955 edition of that Vanderbilt University newspaper known as "Vanderbilt Hustler" edited, etc., by students operating under the direct supervision and control of the University. This declaration states in detail the contents of the publication alleged to be grossly libelous per se.

A similar proceeding and declaration was at the same time instituted in behalf of her daughter, Pamela, an infant, by her father, Mr. Langford, an active minister of the gospel, his church being in a community wherein the Vanderbilt Hustler is circulated. At the same time he instituted similar proceedings alleging the publication to have been a libel per se of him.

Each of the defendants separately demurred, assigning several reasons why the action, in their opinions, could not be maintained. The Circuit Court sustained each demurrer without referring particularly to any of these reasons. Each case is here on the appeal in error of each plaintiff. Each cause of action has in common with the others much that is material to the disposition of the appeal. The merits of all the appeals will, therefore, be herein determined.

By Chapter 47 of our Public Acts of 1955, effective February 18, 1955, it is provided that before the institution of a suit for damages by reason of a libel appearing in a newspaper, five days' written notice of the article, its defamatory elements, etc., must be given to the newspaper so that an opportunity for retraction before suit is instituted might be offorded; that in the event of failure to give such notice the person, if libeled, shall be allowed to recover under the conditions stated in this statute "only actual, and not punitive, damages". The summons issued and the declaration was filed in each of these cases on May 4, 1955, and without this notice having been given. One ground of each demurrer is that the suit should be dismissed for failure to give this notice.

Each plaintiff-in-error counters with the insistence that Chapter 47, in so far as it may be given such retrospective effect, is unconstitutional in that it divests plaintiff of a right which had vested prior to the enactment of that statute. The rejoinder of each defendant is that this Act is procedural; must be given a liberal construction, thus a retrospective effect.

The only right which Chapter 47 purports to take away from a libeled person is the right to recover punitive damages under the conditions stated by this statute when the required notice has not been given prior to

the institution of suit. Punitive damages, as distinguished from actual damages, are allowed as a mere penalty imposed upon the libeler in accordance with whatever may be regarded properly as the extent of the enormity of his offense, and as an example to deter others of like inclination. *Saunders* v. *Baxter,* 53 Tenn. 369, 384-385. Thus, Chapter 47 only takes away the privilege of recovering such penalty imposed upon the libeler.

██ "A mere penalty never vests but remains executory." *May Co.* v. *Anderson,* 156 Tenn. 216, 221, 300 S. W. 12, 14. The giving, therefore, of a retrospective effect to Chapter 47 does not amount to the deprivation of these plaintiffs-in-error of a vested right.

Nor is it consonant with a normal construction of legislative intent, as gathered from the four corners of this statute, to conclude that the General Assembly meant to give a libeler the opportunity to escape the penalty imposed upon him under the conditions stated in the statute if the libel be perpetrated after the enactment of the statute, but at the same time intended to withhold this opportunity of escape from penalty for a libel perpetrated prior to the passage of the act, but as to which no suit had been instituted. The intention, therefore, to give a retrospective effect to this statute seems to be implied necessarily by the very provisions of the Act and its purpose.

██ Chapter 47 does not purport, upon failure to give this notice, to deprive the libeled person of the actual damages, as defined, for instance, by *Saunders* v. *Baxter,* supra, flowing from a per se libel. The failure, therefore, to give the notice required by this 1955 statute did not deprive these plaintiffs-in-error of their vested right to maintain this action for actual damages.

Another ground of demurrer is that the publication in

the Vanderbilt Hustler cannot be regarded as libelous in any view of the matter, because that publication simply narrated accurately, and without more, the contents of a previous declaration filed by each of these plaintiffs-in-error for an alleged libel per se.

What had happened is that another student publication under the auspices of Vanderbilt University, and known as "The Chase", had carried a page on which were four pictures with a legend under each, and a general legend applicable to all four pictures. All the legends were authored by "The Chase". One of these four pictures was a photograph of Pamela, the daughter of Mr. and Mrs. Langford, taken when she was two years old. She was four at the time of the Chase publication. The publication did not identify Pamela by name, nor any of the Langfords.

Based upon these four pictures and the legends mentioned, suits were instituted in the Circuit Court of Davidson County by (1) Mr. Langford, and (2) Mrs. Langford and (3) in behalf of Pamela. Each of these actions made as a part of its declaration the page of the Chase newspaper carrying the four pictures and the legends.

The subsequent publication in the Hustler, and upon which each of the three Hustler libel suits is grounded, purported to carry as a news item the institution of these suits against Vanderbilt University and "The Chase" newspaper. As a part of this news item the Hustler reproduced the aforesaid pictures and legends in "The Chase," and quoted certain portions of the declaration wherein was alleged the presumed nature of the libel per se attributed to "The Chase" newspaper. This news item in the Hustler made certain observations of its own, and employed quite attention-attracting head-

lines. At that time no action had been taken in the Chase libel suits, other than the issuance of the summons and the filing of the declarations.

The insistence of defendants-in-error is that the Hustler merely reported fairly and accurately as a news item the existence of the suit in the Chase case, and the grounds upon which it was brought, as declared in the declarations filed, and reproduced the page of "The Chase," including pictures and legends thereon by reason of which the declaration alleged, in fact, libels per se; that it expressed no opinion as to the merits of the suits "and no comment of any sort was made by the newspaper". To so report a pending suit, the defendants-in-error say, is not a libel.

Plaintiffs-in-error, on the other hand, insist that "the right to publish without liability for damages, does not extend to mere pleadings filed in court, * * * upon which there has been no judicial action". They further insist that if publication is made when such is the status of the previous suit, then, in the language of the brief of plaintiffs-in-error, "it is not the truth of the fact that a publication or repetition was made, but the truth of the libelous matter contained therein".

For a long time the rule undoubtedly was that insisted upon by plaintiffs-in-error, as immediately hereinabove stated.. That fact was recognized in *Campbell* v. *New York Evening Post,* decided in 1927, and reported in 245 N. Y. 320, at page 325, 157 N. E. 153, at page 155, 52 A. L. R. 1432, at page 1435. There the Court noted that

"numerous cases in England and in the states hold that the rule of privilege does not apply to pleadings which, though filed, have not yet received judicial notice."

After pointing out the incongruous results which follow

such rule, the Court said that to publish accurately and without malice that a certain suit has been brought against a defendant charging him with fraud or other offenses reflecting upon his character have become so general a practice "that the public has learned that accusation is not proof, and that such actions are at times brought in malice to result in failure".

The opinion then concluded that it would disregard these precedents and "start with a rule of our own, consistent with practical experience". It then held that publication of matters contained in a filed pleading is privileged if the report is accurate and fair and free of malice, notwithstanding the fact that no judicial action had been taken on the pleading.

The South Carolina case of *Lybrand* v. *State Co.*, decided a number of years later, and reported in 179 S. C. 208, 184 S. E. 580, 104 A. L. R. 1118, followed the holding in *Campbell* v. *New York Evening Post*, supra. In the annotation following the report of that case it is said, 104 A. L. R. at page 1124, that *Campbell* v. *New York Evening Post*, "undoubtedly exercised a profound influence thereafter, and the reasoning employed seems to have received approval in numerous instances where the question was not considered foreclosed". It is insisted in behalf of the Langfords that the question is foreclosed in this jurisdiction by *American Publishing Co.* v. *Gamble*, 115 Tenn. 663, 90 S. W. 1005.

*American Publishing Co.* v. *Gamble*, 115 Tenn. at page 679, 90 S. W. at page 1009, did say the general holding to be that "the right to publish without liability for damages, does not extend to mere pleadings filed in court". In the case before it, however, complainant had made application to the Trial Judge for a fiat, and that application had been granted. 115 Tenn. at page 683, 90 S. W.

1005. The question was whether this ex parte proceeding was a judicial act to the extent that there then existed the right upon the part of the newspaper to publish without liability for damages if the publication was a fair and accurate statement of the bill and was made without malice. The decision so held. So the statement in *American Publishing Co.* v. *Gamble* that the privilege to publish does not extend ''to mere pleadings filed in court'' is obvious dictum.

It is also of interest to note that *American Publishing Co.* v. *Gamble,* in its general discussion of the principle involved, seemed to question the good sense of the rule in that the opinion saw fit to quote, 115 Tenn. at pages 681-683, 90 S. W. at page 1009, from an opinion of another jurisdiction wherein it was observed that ''our law of libel has in many respects only gradually developed itself into anything like a satisfactory and settled form''. This quotation then continued with the significant statement that if the question arose as to the existence of the right to publish based on an indictment or application for criminal information '' 'it would probably be held that the true criterion of the privilege is not whether the report was or was not ex parte, but whether it was a fair and honest report of what had taken place, published simply with a view to the information of the public, and innocent of all intention to do injury to the reputation of the party affected' ''.

It is common knowledge that in this State the press has for time out of mind published the contents of a pleading filed in Court, though no further action has been taken thereon, and that the privilege of so doing has not been questioned when the publication stated fairly and accurately, and without malice, the substance of the contents of the pleading. This unchallenged prac-

tice through the years is some evidence that it has not been regarded by the bar or laity that the right to publish within the limits stated without liability for damages does not apply to mere pleadings filed in Court.

And, as observed in the New York case mentioned, it seems completely illogical to hold that the privilege of publishing the contents of the pleading applies if merely an ex parte application for temporary injunction, or some like ex parte proceedings, has been had, but does not apply in the absence of any preliminary judicial action, though such preliminary action is entirely insignificant in meaning as to the merits of the case.

This Court concludes that the right of newspapers to publish without liability for damages does extend to mere contents of pleadings filed in Court though no judicial action has been taken thereon, provided the publication is a fair and accurate statement of the contents of the pleadings, and made without malice. Such is the rule, though the allegations of the pleading should prove to be false, or the truth thereof not established.

But the declaration in the case at bar charged that (1) the publication in the Hustler was not a fair and accurate statement of the contents of these declarations in the Chase cases, and this unfairness and inaccuracy reflected upon the Langfords, and (2) this publication in the Hustler was made maliciously.

In the case of *Campbell* v. *New York Evening Post,* supra, the Court said:

"The complaint should not have been dismissed. As matter of law it cannot be said that the publication complained of is a full and fair report of the proceedings to date or that the headlines of the article read in connection therewith are not libelous, or that actual malice may not be proved."

That quotation is applicable here and in keeping with the holding in *American Publishing Co.* v. *Gamble,* supra, wherein this Court held, 115 Tenn. at pages 684-685, 90 S. W. at page 1010, that it was the function of the Court to construe the meaning of the pleading, the contents of which purported to be subsequently published in the newspaper provided that pleading is unambiguous; and that then

"having so construed the writings, he should have left it to the jury to say whether the matter as actually published was a fair and substantially accurate report of the contents of the bill, and without actual malice; and upon this basis should have placed the question of privilege or nonprivilege, liability or nonliability."

that; otherwise the action of the Court would be "to usurp the functions of the jury".

Finally it is said by the defendants-in-error that the published matter is not a libel of either of the Langfords. The very limit of the view most favorable to these defendants-in-error which the Court might properly take as to this contention is that the matter published is susceptible of two constructions, the one innocent and the other libelous. Under that view of the matter, it would be a question for the jury as to which of the two constructions is proper. *American Publishing Co.* v. *Gamble,* supra, 115 Tenn. 678, 90 S. W. 1005. To avoid any misunderstanding, this Court does not mean to express any opinion on these particular appeals as to whether the Trial Court may properly take the above stated view most favorable to these defendants-in-error.

By sustaining the demurrers, the Trial Court erroneously deprived the Langfords of their right to a jury trial

as to the questions of fact presented by the declarations, and hereinbefore discussed.

On the date of the institution of these libel suits based on the Hustler publication, there were filed three other suits, one for each of the three Langfords, against the same defendants, wherein it was alleged that these defendants by reason of this publication "did wilfully and maliciously invade the right of privacy of" each of the said Langfords; wherefore, that each is entitled to damages. The suits are based on the assumption that such a cause of action exists under the common law in existence in Tennessee. Such existence is questioned by the defendants-in-error.

From the action of the Circuit Judge in sustaining the demurrers and dismissing the actions, the Langfords have appealed.

Assuming the existence of such common law right of action in Tennessee, the controlling question is whether there is well taken the second ground of each demurrer reciting that:

"The declaration shows on its face that the plaintiff laid aside any claimed right to privacy when she (or he) became a plaintiff in the courts of Tennessee and filed, as a public record, the statements and the picture of which she (or he) now complains as an invasion of her (or his) right to privacy".

These invasion of privacy suits are grounded on the proposition that The Hustler publication violated the right of each of the Langfords to be free from unwarranted publicity.

The Courts which recognize such a right of action agree that the common law right of privacy is properly defined as "the right to be let alone; the right of a person to be free from unwarranted publicity". Specifically,

see *Holloman* v. *Life Insurance Co.,* 192 S. C. 454, 7 S. E. (2d) 169, 127 A. L. R. 110, 112; also *Brents* v. *Morgan,* 221 Ky. 765, 299 S. W. 967, 55 A. L. R. 964, 968. The question, then, is whether the publicity given by the article in the Hustler was unwarranted within the meaning of an invasion of the right of the Langfords to privacy.

The article in the Hustler was a news item informing its readers that the Langfords had sued Vanderbilt University and others for (1) libel and (2) invasion of their privacy based on the described picture page and its legends carried in the Chase newspaper; and that these suits, based on the Chase publication, alleged the picture and legends attached thereto to impute a gross libel per se to each of the Langfords. The interpretation of this picture, and its legends, as construed by the Langfords, is described in detail and with all their alleged gross implications in the first suits for libel and invasion of privacy against the University and others based on the Chase article.

The Hustler, in informing its readers of the institution of these first series of suits, related the interpretation which the Langfords in their respective declarations in those suits had placed on the pictures and legends in the Chase publication.

Summarized,—the publication in the Hustler which the Langfords say is unwarranted within the meaning of the invasion of privacy tort in the second series of such tort suits is a statement by the Hustler of and about matters which the Langfords had already made a matter of public record in the Circuit Court of Davidson County. The merit of this appeal, then, turns upon the question of whether the publicity given by the Hustler article under the circumstances stated is an invasion of the Lang-

fords' respective right of privacy within the meaning of this tort.

In the California case of *Melvin* v. *Reid*, 112 Cal. App. 285, 297 P. 91 as annotated in 138 A. L. R. 57, it was held, as stated by the annotation, that matters so public as to be spread upon a public record, thereby coming within the knowledge and possession of the public, cease to be private, and such publication is not a violation of the common law right of privacy. That same Court in *Metter* v. *Los Angeles Examiner*, 35 Cal. App. (2d) 304, 95 P. (2d) 491, annotated in 138 A. L. R. 56-57, holds that: ''An individual cannot claim a right to privacy with regard to that which cannot, from the very nature of things and by operation of law, remain private.''

In the Ohio case of *Johnson* v. *Scripps Publishing Co.*, Ohio Com. Pl., 6 Ohio Supp. 13, decided in 1940, annotated in 14 A. L. R. (2d) pages 762-763, it was observed in a discussion of this question that the publicized papers there involved had been filed and were open for public inspection. In this situation the Court held, in the language of the annotation, ''that when they were filed they became documents of public record open to such inspection, so that they were divested of any private character which they might theretofore have had, adding that when an elector availed himself of the right to nominate by petition he did so with a full knowledge of the responsibilities attaching and in full contemplation that the petition which he signed would become a public record open to public inspection.''

■ The principle enunciated in these cases is directly applicable to the situation in the instant case. This Court has found no decision which, in its opinion, holds to the contrary. From a practical standpoint, aside from any precedent, it is, this Court thinks, unrealistic and

illogical to hold that there has been an invasion of this common law right of privacy of an individual by publishing a matter which that individual had already made a matter of public record available to the eyes, ears and curiosity of all who care to look, listen or read.

The conclusion of the Court is that the demurrer to each of these three invasion of privacy suits based on the Hustler publication was properly sustained.

The Langfords present a petition in the libel cases heretofore discussed for writ of error and supersedeas to bring up ''those cases designated in this Court in Transcripts Nos. 8, 7, and 6, and file such transcripts for Writs of Errors in such cases''. The reasons assigned are that the Trial Court refused (1) to include in the record the exceptions of the Langfords ''as to the constitutionality of Chapter 47 of the Public Acts of 1955'' and (2) ''admission of counsel for respondent Printing Company —that the libels appearing in the Chase were published by Vanderbilt University''.

■■ The failure to comply with Chapter 47 of the Public Acts of 1955, hereinbefore discussed, was one of the reasons assigned by each demurrer for dismissing the action. The constitutionality of that Act was thereby put in issue. In addition, the constitutional invalidity of a statute invoked in a suit will be considered by the appellate courts when the question is made without regard to whether that insistence was, or not, raised in the lower Court. *Powers* v. *McKenzie,* 90 Tenn. 167, 177, 16 S. W. 559; *Frazier* v. *Elmore,* 180 Tenn. 232, 242, 173 S. W. (2d) 563.

■ As to the second reason assigned for this petition, the declarations, by necessary implication, in considering the merits of a demurrer, assert that the Chase newspaper is published by Vanderbilt University. More-

over, in so far as the libel suits based on the Hustler publication is concerned, it is not material as to whether the newspaper from which the Hustler purports to quote, etc. was the Chase, or some other newspaper.

While the abundance of caution attitude of counsel for petitioners is to be admired, it must be conceded that there was no necessity for this petition to accomplish the two purposes which the petition says it seeks to accomplish. The petition will be denied.

The plaintiffs-in-error likewise suggest the diminution of the record, and motion to file allegedly omitted papers. The papers which it desires to file are copies of the declarations in the suits based on the publication of the Chase magazine.

The declarations in the suits based on the publication in the Hustler allege in some detail the contents of the declaration in the suits based on the Chase article. Hence, it sufficiently appeared for the action of the Court on the demurrers. In the course of presentation of evidence, these declarations will, no doubt, be presented.

The judgment of the lower Court in sustaining the demurrers in the libel cases based on the Hustler publication will be reversed and the cause remanded for the entry of a judgment overruling these demurrers, and for further appropriate proceedings. The costs of the appeal as to these suits will be adjudged against the defendants-in-error.

The judgment of the Circuit Court in sustaining the demurrers in the invasion of privacy suits based on the Hustler publication will be affirmed. The cost of the appeal in these cases, and the cost incurred by the petition for writ of error, etc., and by the suggestion of diminution of the record will be adjudged against the Langfords and the sureties on their respective bonds.