EVELENE N. STEIN,                    )
                                     )
        Plaintiff/Appellant,         )    Appeal No.
                                     )    01-A-01-9509-CV-00407
v.                                   )
                                     )    Davidson County Circuit Court
DAVIDSON HOTEL COMPANY,              )    No. 95-C-67
                                     )
        Defendant/Appellee.          )

FILED

May 8, 1996

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE FIRST CIRCUIT COURT OF DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


THE HONORABLE HAMILTON V. GAYDEN, JUDGE


PATRICIA A. MONTGOMERY
Westlake & Marsden, P.C.
Third National Financial Center
424 Church Street, Suite 1400
Nashville, Tennessee 37219
        ATTORNEY FOR PLAINTIFF/APPELLANT


JOHN S. HICKS
STEPHEN H. BILLER
KATHERINE A. BROWN
Baker, Donelson, Bearman & Caldwell
1700 Nashville City Center
511 Union Street
Nashville, Tennessee 37219
        ATTORNEYS FOR DEFENDANT/APPELLEE


AFFIRMED AND REMANDED


SAMUEL L. LEWIS, JUDGE

<u>OPINION</u>

This is an appeal by plaintiff/appellant, Evelene N. Stein, from a judgment dismissing five of the seven claims alleged by Ms. Stein against defendant/appellant, Davidson Hotel Company ("Davidson").

**I.    Facts and History**

Ms. Stein began working at the Holiday Inn Crowne Plaza on 6 June 1989.  At that time, Flautt Properties, Inc. owned the hotel.  In September of 1990, Flautt sold the hotel to Davidson.  After the sale, Ms. Stein continued to work at the hotel. The complaint alleged that Ms. Stein was fifty-one years old and that she was an above average employee according to Davidson's own criteria.

In 1992, Davidson instituted a drug and alcohol testing program.  The program included pre-employment testing, reasonable suspicion testing, after accident testing, and random drug testing. Davidson required all employees to sign a consent and release form. Ms. Stein alleged that the understanding of the employees was that Davidson would immediately terminate them if they failed to sign the form.  Further, Ms. Stein claimed that she signed the form based on this perceived threat and that she did not realize the form released Davidson and the testing facility from "liability for the negligent performance or reporting of drug test results."

In October 1994, Davidson advised Ms. Stein that they had selected her for a random drug test.  Thereafter, Ms. Stein went to Roche Biomedical Laboratories, Inc. and provided them with a urine sample.  Joe Dietz, Ms. Stein's immediate supervisor, informed Ms. Stein that she had tested positive for drugs.  Later that day, Ms. Stein met with other Davidson managers and denied any drug use.  In

2

her complaint, Ms. Stein alleged that she offered to provide another urine sample or a blood sample, but Davidson refused these offers. In Davidson's brief, Davidson stated that it offered to have Roche retest Ms. Stein's original urine sample, but Ms. Stein refused. As a result of the positive test, Davidson terminated Ms. Stein.

On 9 January 1995, Ms. Stein filed her complaint against Davidson. The causes of action contained in the complaint were as follows: 1) wrongful discharge in violation of public policy as expressed in the federal and state constitutions; 2) tortious invasion of privacy; 3) breach of an implied employment contract; 4) breach of an implied covenant of good faith and fair dealing; 5) negligence on the part of Davidson; 6) negligent infliction of emotional distress and outrageous conduct; and 7) failure to pay Ms. Stein her earned vacation time. On 7 March 1995, Davidson filed a "Motion to Dismiss or for Summary Judgment."

On 9 June 1995, the trial court entered an order granting the motion in part and denying it in part. The court granted Davidson's motion to dismiss for failure to state a claim upon which relief can be granted as to counts one, two, three, five, and six. The court, for "reasons stated in open court," took "Davidson's Motion regarding the fourth cause of action under advisement pending further order." Finally, the court reviewed the affidavits submitted by the parties and concluded that there was a genuine issue of material fact raised by the seventh count. Based on this conclusion, the court denied Davidson's motion as to the seventh count. Pursuant to Tennessee Rule of Civil Procedure 54.02, the court found that there were no just reasons for delay and held that the order was final.

Ms. Stein filed her notice of appeal with the clerk of this

3

court on 7 July 1995. The notice stated that Ms. Stein sought to appeal that part of the 9 June 1995 order dismissing counts one, two, and three of her complaint. Later, in her brief, Ms. Stein voluntarily dismissed her appeal as to count three. Thus, Ms. Stein presented this court with the following two issues:

    I.    Whether a cause of action for wrongful discharge may be premised upon the termination of employment in violation of an employee's constitutional rights.

    II.   Whether a cause of action for the tortious invasion of privacy requires state action in a case by an employee against a private sector employer.

We acknowledge at the outset that the rights invoked by Ms. Ms. Stein are substantial. Privacy interests cover a broad range of human activity. In the constitutional context our courts have recognized the privacy interest surrounding human procreation,[1] the care and custody of children,[2] and consensual sexual activity between adults.[3] The right to personal autonomy is extremely important in light of the growing intrusiveness of today's society. Invasions of privacy involve interferences with an individual's interest "in leading, to some reasonable extent, a secluded and private life, free from the prying eyes, ears and publications of others." *See* RESTATEMENT (SECOND) OF TORTS, § 652A cmt. b (1976). These invasions of privacy can take many different forms, including opening a person's private mail, searching a persons's safe, purse, or wallet, or examining a person's private bank account. RESTATEMENT (SECOND) OF TORTS, § 652B cmt. b (1976). The invasion of this right is no less intrusive when it is undertaken by a private person than when it is undertaken by the government or a subsidiary of the government. Experience teaches us that personal privacy is

---

[1] *Davis v. Davis*, 842 S.W.2d 588, 600 (Tenn. 1992), *cert. denied*, 113 S. Ct. 1259 (1993).

[2] *Simmons v. Simmons*, 900 S.W.2d 682, 683-84 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 582 (Tenn. 1993).

[3] *Campbell v. Sundquist*, App. No. 01-A-01-9507-CV-00321 slip. opn. at 18-20, 21 T.A.M. 7-4 (Tenn. App. 26 Jan. 1996).

4

threatened by the almost insatiable information gathering appetites of not only governments but of private interests as well. *Wilkinson v. Times Mirror Corp.*, 264 Cal. Rptr. 194, 200 (Cal. App. 1989). The reasonable expectation of privacy would be illusory at best if individuals could not control the circulation of personal information and if the law only restricted the government's collection and retention of information.

## II.   Standard of Review

Before addressing Ms. Stein's issues, we must first address a preliminary issue dealing with the standard of review. Ms. Stein contends that the trial court's failure to exclude affidavits, presented by both parties, converted the Rule 12.02(6) motion to dismiss into a Rule 56 motion for summary judgment. Thus, she suggested that we review the trial court's decision as if the court based its decision on the principles of summary judgment. Davidson, however, argued that this court should review the trial court's order as if the court dismissed the counts based on a Rule 12.02(6) motion to dismiss.

We agree with Davidson. Ms. Stein's contention that a trial court can convert a Rule 12.02(6) motion into a Rule 56 motion by considering material outside the pleadings is correct. *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). A trial court, however, can "prevent a conversion from taking place by declining to consider extraneous matters." *Pacific E. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 (Tenn. App. 1995). That is precisely what happened in this case. The relevant portion of the trial court's order provided:

> In ruling upon Davidson's Motion as it pertains to the
> seventh count of the Complaint, the Court has considered
> the Affidavit of Casey Stovall submitted by Davidson and
> has considered the Affidavit of Ms. Stein. Therefore,

5

the Court treats the Motion as it pertains to the seventh count of the Complaint as a Motion for Summary Judgment pursuant to Rule 56 of the Tennessee Rules of Civil Procedure.

As to counts one, two, three, five, and six, the trial court expressly stated that he was dismissing the counts for failure to state a cause of action upon which relief can be granted, a Rule 12.02 ground for dismissal. It is apparent that the trial court's actions converted the motion to dismiss as it pertained to the seventh count into a motion for summary judgment. In contrast, the court did not convert the motion to dismiss into a motion for summary judgment when it addressed counts one and two, the counts which form the basis of this appeal. Therefore, this court must use the standard of review applicable to Rule 12.02(6) motions.

> In reviewing an appeal from an order dismissing a suit for failure to state a claim upon which relief can be granted, we obviously are limited to the allegations in the complaint, and we must construe the complaint liberally in favor of the plaintiff, taking all of the allegations of fact therein as true.

*Randolph v. Dominion Bank of Middle Tenn.*, 826 S.W.2d 477, 478 (Tenn. App. 1991) (citing *Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975)).

### III. Wrongful Discharge Claim

"Under long-established Tennessee law, an employee-at-will can be discharged without breach of contract for good cause, bad cause or no cause at all." *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 443 (Tenn. 1984)(citing *Payne v. Railroad Company*, 81 Tenn. 507 (1884)). Given the long history of this rule, the supreme court was unwilling to create any exceptions. In 1984, however, the court held that the Workers' Compensation Law implicitly included an action for retaliatory discharge. Specifically, the action recognized by the court allowed an employee to bring a suit against an employer who had terminated the employee for filing a worker's

6

compensation claim. *Id.* at 443-45. In coming to its final decision, the court stated as follows:

> [T]he Workers' Compensation Law is a comprehensive scheme enacted to provide a certain and expeditious remedy for injured employees. It reflects a careful balancing of the interests of employer and employee. . . .
>
> Retaliatory discharges completely circumvent this legislative scheme. Such discharges will have the effect of relieving the employer of its duty to compensate and the employee of his or her right to compensation. . . .
>
> In our opinion, a cause of action for retaliatory discharge, although not explicitly created by the statute, is necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature. A statute need not expressly state what is necessarily implied in order to render it effectual.

*Id.* at 443. In a later opinion, the court emphasized that its decision had not created a new exception to the employment at will doctrine, but "merely recognized that implicit within the provisions of T.C.A. Sec. 50-6-114 a cause of action existed. . . ." *Harney v. Meadowbrook Nursing Ctr.*, 784 S.W.2d 921, 922 (Tenn. 1990); *see Hodges v. S.C. Toof & Co.* 833 S.W.2d 896, 903 (Tenn. 1992) (O'Brien, J., concurring and dissenting).

Through the years, the supreme court has refined the test for determining whether the courts should recognize a cause of action for wrongful discharge.[4] In 1988, the supreme court stated as follows:

> To be liable for retaliatory discharge. . . , the employer must violate a clear public policy. Usually this policy will be evidenced by an unambiguous constitutional, statutory or regulatory provision. Further, the violation must be a substantial factor in the termination of an at-will employee, agent or officer.

*Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988). Time and time again, the supreme court has echoed this principle.

---

[4] Although authorities suggest that retaliatory discharge is actually one of the wrongful discharge actions based on a public policy violation, Tennessee's court often use the terms wrongful discharge and retaliatory discharge interchangeably. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS §130, at 1029-30 (5th ed. 1984); 82 AM. JUR. 2D *Wrongful Discharge* § 11 (1992).

*Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994); *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 557 (Tenn. 1993); *Hodges*, 833 S.W.2d at 899; *Harney*, 784 S.W.2d at 922-23.

Because it is not the role of the courts to create public policy, it has been difficult, if not impossible, for the courts to recognize novel claims of wrongful discharge. In regard to the courts and the creation of public policy, the Tennessee Supreme Court stated as follows:

> This court can know nothing of public policy except from the constitution and the laws, and the course of administration and decision. It has no legislative powers. It cannot amend or modify any legislative acts. It cannot examine questions as expedient or inexpedient, as politic or impolitic. Considerations of that sort must, in general, be addressed to the legislature. Questions of policy determined there are concluded here.
> There are cases, it is true, in which arguments drawn from public policy must have large influence; but these are cases in which the course of legislation and administration do not leave any doubt upon the question what the public policy is, and in which what would otherwise be obscure or of doubtful interpretation, may be cleared and resolved by reference to what is already received and established.

*Nashville Ry. & Light Co. v. Lawson*, 144 Tenn. 78, 91, 229 S.W. 741, 744 (1920) (quoting *License Tax Case*, 5 Wall. 469, 18 L. Ed. 497).

The Tennessee General Assembly has also played a role in the development of the employment at will doctrine. Through the years the General Assembly has enacted various statutes which prohibit employers from terminating employees for certain reasons. For example, an employer may not terminate an employee because the employee served as a juror[5]; because an employee is of a particular

---

[5] Tenn. Code Ann. § 22-4-108(f)(1) (1994); *see also Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992).

8

race, creed, color, religion, sex, age, or national origin[6]; because an employee is disabled[7]; because an employee refused to participate in or refused to remain silent about illegal activities[8]; or because an employee filed a complaint, instituted a proceeding or investigation, testified in a proceeding, or exercised a right pursuant to the Occupational Safety and Health Act of 1972.[9]

To summarize, the statutes of this state provide employees relief from certain employer conduct. In addition, the courts have recognized a very limited cause of action for wrongful discharge based on a violation of clear public policy. As to the instant case, it is not the province of this court to create any additional exceptions to the employment at will doctrine absent a violation of clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision.

Ms. Stein's first issue is very broad and includes many topics which are irrelevant to this case. The actual issue presented by this appeal is whether the trial court correctly found that count one of Ms. Stein's complaint failed to state a claim upon which relief can be granted. In resolving this issue, there are two questions derived from the above discussion which we must answer. First, is there a statutory basis for Ms. Stein's cause of action, and if so, did Ms. Stein allege the necessary elements? Second, did count one of Ms. Stein's complaint allege a wrongful discharge action based on the theory that Davidson violated clear public

[6] Tenn. Code Ann. § 4-21-301(1) (1991) (regarding retaliation or discrimination against an employee who has opposed a discriminatory practice); Tenn. Code Ann. § 4-21-401(a) (1991) (defining a discriminatory practice in regard to employers); *see also Newsom v. Textron Aerostructures*, No. 01A01-9504-CH-00151, 1995 WL 614203, at *7-*9 (Tenn. App. 20 October 1995); *Roberson v. University of Tenn.*, 829 S.W.2d 149, 152 (Tenn. App. 1992).

[7] Tenn. Code Ann. § 8-50-103(a) (1993).

[8] Tenn. Code Ann. § 50-1-304(a), (c) (1991).

[9] Tenn. Code Ann. §§ 50-3-106(7), 50-3-409(a) (1991).

9

policy?  If we answer these question in the negative, we must affirm the decision of the trial court.

It is the opinion of this court that the trial court correctly dismissed count one.  In her complaint, Ms. Stein alleged that "[p]laintiff's employment was terminated for the sole reason that Plaintiff tested positive on a single random urine drug screen negligently performed by Defendant, Roche."[10]  There are no statutes which prohibit an employer from discharging an employee for a positive drug test.  Because there is no statutory cause of action, the answer to the first question is no.

The second question is more difficult.  To explain, the cases brought before Tennessee's courts have alleged retaliatory discharge.  The premise of an action for retaliatory discharge is that an employer terminates an employee because that employee acted in a manner which was detrimental to the employer.  In other words, the employer retaliates against the actions of the employee. Further, the action of the employee is generally a protected action or an action which society deems beneficial such that terminating an employee for acting or failing to act violates public policy. Examples of beneficial or protected actions include filing a workers' compensation claim[11] or a discrimination claim.[12]  Clearly, this is not the situation presented by this case.

Ms. Stein's complaint stated as follows:

18. Davidson's stated policy of terminating employees for a single positive drug test result violates the public policy of the State of Tennessee as expressed in:

(a) Article I §8 of the Tennessee Constitution which guarantees citizens of this

---

[10]  At no time was Roche a party to this action.

[11]  *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 444-45 (Tenn. 1984).

[12]  *Roberson v. University of Tenn.*, 829 S.W.2d 149, 152 (Tenn. App. 1992).

10

state the right to privacy.
>           (b)   Article I §7 of the Tennessee
> Constitution which protects individuals from
> unreasonable searches and seizures.
>           (c)   The common law of the State of
> Tennessee, which prohibits intrusions on an
> individual's privacy or solitude.

Clearly, Ms. Stein's contention is that Davidson's termination policy, not its mandatory drug testing program, violates Tennessee's public policy.  Thus, the issue before this court is whether an employer violates public policy, as evidenced by constitutional, statutory, or regulatory provisions, when that employer institutes a policy allowing it to discharge employees who test positive for drugs.

In her brief, Ms. Stein argued that Davidson's policy of terminating employees for a single positive drug test result violated public policy because there were no safeguards to ensure the accuracy of the result or to prevent the collection method from being too intrusive.  In other words, Ms. Stein's argument in her brief was that both Davidson's termination policy and Davidson's method of obtaining the test results violated the public policy of this state.  In her complaint, however, Ms. Stein only alleged that Davidson's termination policy violated the public policy.  Because this appeal concerns a motion to dismiss, our analysis is constrained by the allegation found in the pleadings.

While the method in which Davidson conducted the test may violate some public policy in favor of accuracy and minimal intrusion, Davidson's policy of terminating employees who test positive for drugs does not violate any public policy known to this court.  To the contrary, Tennessee's public policy is in total opposition to drug use in the workplace.

Ms. Stein insists that the state's public policy against terminating employees who test positive for drugs can be found in

11

the personal privacy protections of article 1, sections 7 and 8 of the Tennessee Constitution. Her contention that Tennessee's Bill of Rights protect the rights of citizens is correct, however, the Tennessee Bill of Rights protects against governmental interference. *Freshwater v. State*, 2 Tenn. Crim. App. 314, 320, 453 S.W.2d 446, 449 (1969), *cert. denied*, 400 U.S. 840 (1970). Recognizing this fundamental principal of constitutional interpretation, other courts have held that state constitutions are not sources of public policy in wrongful discharge cases unless the constitutional provision at issue directly addresses private conduct. *Borse v. Peace Goods Shop, Inc.*, 963 F.2d 611, 620 (3d Cir. 1992); *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 365 (Ok. 1994).

State statutes and regulations may also provide the clear public policy required for a wrongful discharge action. Tennessee's statutes, however, seem to favor the use of drug testing. The Tennessee General Assembly has specifically authorized drug testing for public school students[13] and the security personnel employed by the Department of Corrections and Youth Development.[14] In 1995, the General Assembly enacted a statute providing that private sector employees are not entitled to unemployment compensation if they left their most recent work "either to avoid taking a drug or alcohol screening test, or after receiving a positive result to a drug or alcohol screening test."[15]

Some courts have even looked to the common law as a source of the clear public policy. These courts concluded that the state's recognition of a common law action for invasion of privacy supplied

---

[13] Tenn. Code Ann. §49-6-4213 (1990).

[14] Tenn. Code Ann. § 41-1-122 (1990).

[15] Tenn. Code Ann. § 50-7-302(a)(9)(Supp. 1995).

the clear public policies needed to support a wrongful discharge cause of action. *See Borse*, 963 F.2d at 620-22; *Hennessy v. Coastal Eagle Point Oil Co.*, 609 A.2d 11, 17-9 (N.J. 1992). The courts of Tennessee have never gone this far. The Tennessee Supreme Court has stated that "clear public policy" is to be found in an "unambiguous constitutional, statutory, or regulatory provision." *Anderson*, 857 S.W.2d at 557.

Ms. Stein's wrongful discharge claim fails to state a claim upon which relief can be granted because she has not pointed to any clear public policy against terminating employees who test positive for drugs. To the contrary, creating a drug free work environment in the public and private sector is completely consistent with the State of Tennessee's public policy.

## IV. Invasion of Privacy

The second count of Ms. Stein's complaint alleged the following:

24. By requiring Plaintiff to submit to a random drug test which has no relation to Plaintiff's duties as an employee of Davidson, Davidson has tortiously intruded into Plaintiff's privacy.

25. . . . The intrusion into Plaintiff's personal and private habits is in violation of Plaintiff's constitutional and common law rights.

These allegations reveal that Ms. Stein premised her invasion of privacy claim on two bases; one constitutional and one common law. The trial judge dismissed the entire count holding "that the second count of the Complaint d[id] not allege the state action required to support the constitutional claim of invasion of privacy. . . ." In her brief, Ms. Stein argued that it is not necessary for a plaintiff to allege state action because Tennessee recognizes a common law right of action for invasion of privacy against a private defendant. Thus, it is Ms. Stein's contention that the

13

trial judge could not have dismissed her common law claim for lack of state action.

In order to establish a violation of the constitutional right to privacy, a party must allege state action, however; a cause of action for tortious invasion of privacy is not dependant on state action. *See Ensor v. Rust Eng'g Co.*, 704 F. Supp. 808, 816 (E.D. Tenn. 1989); *Martin v. Senators, Inc.*, 220 Tenn. 465, 471, 418 S.W.2d 660, 663 (1967)(stating when an individual is liable for tortious invasion of privacy). Thus, the trial court erred in dismissing count two of Ms. Stein's complaint in its entirety on this basis.

Ms. Stein's complaint included allegations involving two invasion of privacy theories. The first was that Davidson invaded her privacy by intruding into her seclusion. Second, she contended that Davidson publicly disclosed private information by telling certain persons about the results of her drug test.

### A. Public Disclosure of a Private Fact

In a 1967 case, the Tennessee Supreme Court defined the tort of invasion of privacy as follows: "'A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other.'" *Martin*, 418 S.W.2d at 663 (1967) (quoting RESTATEMENT OF TORTS §867 (1939)). The court then went on to find that "liability exists only if the conduct is such that a defendant should have realized it would be offensive to persons of ordinary sensibilities; and that it is only where the intrusion had gone beyond the limits of decency that liability accrues. . . ." *Id.* at 664; *see also Swallows v. Western Elec. Co.*, 543 S.W.2d 581, 583

14

(Tenn. 1976); *Fann v. City of Fairview*, 905 S.W.2d 167, 170 (Tenn. App. 1994); *Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747, 752 (Tenn. App. 1991).

In 1987, the Court of Appeals for the Western Section determined that a plaintiff, who had alleged public disclosure of a private fact, failed to establish that the defendant had made the information public. The court determined that, in order to successfully assert a public disclosure claim, the plaintiff had to establish that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Gentry v. E. I. DuPont De Nemours and Co.*, 1987 WL 15854, at *3 (Tenn. App. 18 August 1987)(quoting RESTATEMENT (SECOND) OF TORTS § 652(d) cmt. a (1976)). They then found that the facts established that only a few employees had heard the information and that the defendant instructed them not to repeat it. Thereafter, the court upheld the finding of the trial court in favor of the defendant. *Id.* at *4.

The only allegation regarding the extent of the disclosure stated as follows:

> Contrary to the requirement of confidentiality in Davidson's alcohol/drug testing policy, the results of Plaintiff's drug test were disclosed to one of Plaintiff's peers and to one of Plaintiff's subordinates. Upon information and belief, Plaintiff believes that these results have been disclosed to additional employees of Davidson. The results of Plaintiff's drug test were revealed to employees who did not have a legitimate interest in having this information available.

Construing the complaint liberally, one finds that Ms. Stein failed to allege the disclosure necessary to state a cause of action for public disclosure of a private fact. She alleges that Davidson disclosed the information to only two people. Further, the allegation on information and belief does not allege the necessary

15

disclosure because it does not necessarily follow that Davidson communicated the information to so many people that it is substantially certain to become public knowledge. Because Ms. Stein failed to allege a necessary element of the cause of action, the court correctly dismissed the claim.

**B.    Intrusion into Seclusion**

The courts of this state have held that a plaintiff may waive his or her right to privacy and, thus, waive their right to bring an action for an invasion of that right. *Martin*, 418 S.W.2d at 662-64; *see Langford v. Vanderbilt Univ.*, 199 Tenn. 389, 403-04, 287 S.W.2d 32, 39 (1956). "A waiver or relinquishment of this right, or of some aspect thereof, may be implied from the conduct of the parties and the surrounding circumstances." *Martin*, 418 S.W.2d at 663 (quoting 41 AM. JUR. p. 937). It is the opinion of this court that Ms. Stein waived her right to bring an action against Davidson for intruding into her seclusion.

It is Ms. Stein's contention that the "[e]mployees were forced to consent to random drug testing or risk immediate termination." Nevertheless, she did consent to the testing. Further, there were no allegations that she objected to the test when asked to sign the form or when selected for the test. In addition, she did not allege that she sought other employment after having to sign the form.

Even if we were to find that Davidson "forced" Ms. Stein to sign the consent form, our conclusion would be the same. To explain, Ms. Stein began working for the hotel in June 1989, and Davidson instituted the drug policy in February 1992. Ms. Stein continued to work at the hotel for over two years even though she

knew the nature of the test and that Davidson could choose her for a test at any time.  There is no evidence that she was dissatisfied with her employment or that she intended to find other work.  In fact, the complaint established that the quality of her work was above average.

We are of the opinion that Ms. Stein's conduct and the surrounding circumstances established that she waived her right to bring this action.  Thus, the trial court properly dismissed count two of Ms. Stein's complaint.

## V.    Conclusion

For the foregoing reasons, we are of the opinion that the decision of the trial court should, in all respects, be affirmed. The judgment of the trial court is therefore affirmed with costs on appeal assessed to plaintiff/appellant, Evelene N. Stein, and the cause is remanded to the trial court for any further necessary proceedings.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
WILLIAM C. KOCH, JR., JUDGE